**2024 IL 128492**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 128492)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
RICHARD HUFF, Appellant.

*Opinion filed February 1, 2024.*

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Cunningham, and Rochford concurred in the judgment and opinion.

## OPINION

¶ 1     Petitioner, Richard Huff, filed a *pro se* postconviction petition alleging that his natural life sentence was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The petition was automatically advanced to the second stage due to the time limit, and counsel was appointed. Appointed postconviction counsel filed a certificate in accordance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017)

but did not amend the *pro se* petition. After the State filed a motion to dismiss the petition, postconviction counsel did not file a response and instead stood on the allegations in the *pro se* petition and the Rule 651(c) certificate. The Cook County circuit court granted the motion to dismiss, and the appellate court affirmed. Petitioner argues that he rebutted the presumption that postconviction counsel provided reasonable assistance by showing that counsel stood on a meritless petition, rather than moving to withdraw or amending the *pro se* petition. We hold that petitioner failed to rebut the presumption of reasonable assistance, so we affirm the dismissal of the *pro se* petition.

¶ 2                                   BACKGROUND

¶ 3        Petitioner was convicted of first degree murder in 2000 for the beating death of his five-year-old daughter. A brief summary of the facts presented at trial is sufficient for the purpose of determining the issue before us. On September 9, 1997, the victim arrived home from kindergarten in the afternoon with homework, which consisted of a page of coloring and tracing. After midnight, in the early hours of September 10, 1997, petitioner arrived home from work, and the victim had not completed her homework. Petitioner gave the victim 15 minutes to complete her homework. After a few 15-minute time intervals, during which time the victim did not complete her homework, petitioner began striking the victim on the bottom and legs with a belt. Playing cards, which the victim had placed inside her underwear to cushion the blows, fell out, so petitioner had the victim remove her shirt and underwear. Petitioner instructed the victim, who was now naked, to stand in the living room facing the wall. Petitioner then proceeded to strike the victim with the belt three or four more times. The victim went back to the kitchen table to work on her homework, but petitioner struck her again with the belt when her homework was not completed in 15 minutes. Petitioner then began striking the victim with a plastic bag wrapped with electrical tape. Petitioner continued to strike the victim at regular intervals, during which time the victim was upset and stumbled numerous times while trying to run away from petitioner. Petitioner stopped striking the victim around 3:30 a.m. and then ran a bath for the victim. After the bath, petitioner had to assist the victim in walking to her bed. A few hours later, around 9 a.m., petitioner found the victim on the floor of her bedroom, not breathing. Paramedics

attempted lifesaving measures, but they were unsuccessful, and the victim was transported to the hospital, where she was declared deceased.

¶ 4 The victim's death was caused by multiple blunt traumas. The autopsy revealed numerous recent external injuries: bruising about her head; hemorrhaging of the eyes; bleeding on the inner surface of the lower lip; and bruising and/or abrasions on her ears, jaw, neck, shoulder, forearms, upper arms, chest, abdomen, buttocks, back, front and back upper thighs, calves, and shins. The victim also suffered multiple areas of brain hemorrhaging, along with cerebral edema and hemorrhaging in both kidneys. A jury found petitioner guilty of first degree murder.

¶ 5 The State sought the imposition of the death penalty on the basis that the victim was under 12 years old and the victim's death resulted from exceptionally brutal or heinous behavior indicative of wanton cruelty. See 720 ILCS 5/9-1(b)(7) (West 1996). Petitioner waived his right to a jury for a determination of death eligibility, and the trial court found petitioner eligible for the death penalty. In sentencing petitioner, the trial court found that the victim was under 12 years old, petitioner was over the age of 18, and the death of the victim was "exceptionally brutal and heinous." The trial court concluded that petitioner's lack of criminal history was a mitigating factor and sentenced petitioner to natural life in prison, rather than death.

¶ 6 Petitioner appealed his conviction and sentence, arguing, *inter alia*, that his natural life sentence violated *Apprendi* because the sentence was based on a finding of "exceptionally brutal and heinous" behavior made by the trial judge, rather than a jury. The appellate court affirmed petitioner's conviction and sentence, finding that *Apprendi* did not apply to the trial court's finding when petitioner had waived a jury determination of death eligibility and petitioner had been found eligible for the death penalty. Under those circumstances, the trial court is permitted to impose a sentence of natural life without implicating *Apprendi*. *People v. Huff*, 331 Ill. App. 3d 1129 (2001) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 7 Thereafter, in 2005, petitioner filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2004)), again asserting that his extended-term sentence was unconstitutional under *Apprendi*. The circuit court granted the State's motion to dismiss, finding that the petition under section 2-1401 of the Code was untimely and that the sentencing claims were barred by the doctrine of *res judicata*. The

appellate court affirmed, reiterating that on direct appeal it had already held that, when a defendant is found eligible for the death penalty, the trial court may impose a natural life sentence without implicating *Apprendi. People v. Huff*, 367 Ill. App. 3d 1091 (2006) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 8 Petitioner filed the instant *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) on July 19, 2016, again contending that his natural life sentence, based on the trial judge's finding that the offense was "exceptionally brutal and heinous," was unconstitutional under *Apprendi*. Anticipating the procedural bars to his petition, petitioner asserted that the law had evolved since his direct appeal, so his claim was not barred by *res judicata* and the court should reconsider his claim. Petitioner also acknowledged that his petition was untimely but addressed that ground for dismissal by arguing that his sentence was void and the challenge could be raised at any time.

¶ 9 The petition was automatically advanced to second-stage proceedings without review by the circuit court, and counsel was appointed. Appointed counsel filed a Rule 651(c) certificate stating that she had (1) consulted with petitioner by phone, mail, electronic means, or in person to ascertain his contentions of deprivations of constitutional rights; (2) obtained and examined the record of proceedings prior to and including the trial and sentencing in the case; (3) read and researched the issues presented in petitioner's *pro se* petition; and (4) not prepared a supplemental petition because the *pro se* petition "adequately set[ ] forth the petitioner's claim of deprivation of his constitutional rights." The State filed a motion to dismiss, alleging that the petition was untimely, the claim was barred by *res judicata*, and, if there was an *Apprendi* violation, petitioner was not prejudiced. At the hearing on the motion to dismiss, postconviction counsel stated that she would not be making any additional arguments, but rather she would rest on her Rule 651(c) certificate and the arguments made by petitioner in the *pro se* petition. Counsel also waived petitioner's appearance at the hearing. The circuit court granted the motion to dismiss, finding that petitioner's *Apprendi* claim was barred by *res judicata*.

¶ 10 On appeal, petitioner argued that, because his *pro se* petition was deficient on its face, postconviction counsel acted unreasonably by neither amending the petition nor moving to withdraw if she believed his petition could not be cured by

an amendment. The appellate court affirmed the dismissal, holding that petitioner failed to rebut the presumption that his postconviction counsel rendered reasonable assistance by substantial compliance with Rule 651(c). 2022 IL App (1st) 201278-U, ¶ 30. The court rejected petitioner's argument that postconviction counsel was required to either amend the *pro se* petition and respond to the State's motion to dismiss or, if no amendment was available, withdraw from the case. The appellate court acknowledged that one of the requirements of Rule 651(c) was to make any amendments necessary for the adequate presentation of petitioner's claims, but amendments that would only further a frivolous or patently nonmeritorious claim were not "necessary" within the meaning of the rule. *Id.* ¶ 27 (citing *People v. Greer*, 212 Ill. 2d 192, 205 (2004)). The court held that, while prior case law "authorize[d] withdrawal of postconviction counsel where the petition cannot be amended to state a meritorious claim, it nowhere create[d] a *per se* requirement that counsel must withdraw instead of complying with Rule 651(c) (eff. July 1, 2017) and standing on the *pro se* petition." *Id.* ¶ 36. The appellate court concluded that postconviction counsel's decision to rest on the *pro se* petition, when no amendment was available, did not rebut the presumption of reasonable assistance. *Id.* ¶ 40.

¶ 11    We granted petitioner's petition for leave to appeal, which asks this court to resolve a split among the appellate districts over whether postconviction counsel, if they believe a *pro se* petition is frivolous, must move to withdraw or whether counsel has a choice between withdrawing or standing on the *pro se* petition.

¶ 12                                    ANALYSIS

¶ 13    The issue before us is whether postconviction counsel's decision to file a Rule 651(c) certificate and stand on petitioner's *pro se* postconviction petition, rather than either amending the petition or moving to withdraw, rebutted the presumption of reasonable assistance. Our review of a circuit court's dismissal of a postconviction petition at the second stage is *de novo*, as is our review of the proper interpretation of a supreme court rule. *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007).

¶ 14    Petitioner argues that the *pro se* petition was frivolous as written and required dismissal during second-stage proceedings absent an amendment to state a

nonfrivolous claim. Petitioner argues that, when a petition only makes frivolous claims, postconviction counsel has only two choices: (1) amend the *pro se* petition or (2) move to withdraw under *Greer*. Petitioner contends that postconviction counsel did not have the choice to rest on the frivolous *pro se* petition. By resting on the frivolous *pro se* petition, postconviction counsel acted unethically, silenced petitioner, and nullified petitioner's opportunity to flesh out his *pro se* claims. Petitioner argues that his showing that postconviction counsel rested on the petition rebutted the presumption of reasonable assistance, requiring remand for further second-stage proceedings with newly appointed counsel. Petitioner relies on several appellate court decisions in support of his argument, which state that if postconviction counsel finds all the claims in the *pro se* petition to be frivolous or patently without merit, counsel must file a motion to withdraw. See, *e.g.*, *People v. Shortridge*, 2012 IL App (4th) 100663, ¶ 13; *People v. Elken*, 2014 IL App (3d) 120580, ¶ 36; *People v. Moore*, 2018 IL App (2d) 170120, ¶ 33.

¶ 15　　The State argues that petitioner failed to rebut the presumption of reasonable assistance that was created by the filing of counsel's Rule 651(c) certificate. Postconviction counsel performed the duties described in Rule 651(c). The fact that petitioner's claim was weak or ultimately without legal merit did not render counsel's performance unreasonable. The State contends that *Greer* only holds that postconviction counsel may withdraw under the Act when counsel feels ethically compelled to do so. The State contends that *Greer* does not hold that counsel provides unreasonable assistance when counsel declines to withdraw when faced with a frivolous petition but, in any event, there was no indication that postconviction counsel believed the petition to be frivolous. The State relies on several appellate court decisions that state that if postconviction counsel finds all the claims in a *pro se* petition to be frivolous and that it cannot be amended to state a nonfrivolous claim, counsel has the option of standing on the *pro se* petition or withdrawing as counsel. See, *e.g.*, *People v. Malone*, 2017 IL App (3d) 140165, ¶ 10; *People v. Dixon*, 2018 IL App (3d) 150630, ¶ 22; *People v. Pace*, 386 Ill. App. 3d 1056, 1062 (4th Dist. 2008).

¶ 16　　Under the particular facts of this case, we find it unnecessary to reach the issue upon which the appellate districts are split, *i.e.*, whether postconviction counsel may stand on a *pro se* petition that counsel knows to be frivolous. As will be discussed further below, there is no indication that postconviction counsel found

petitioner's claim to be frivolous. Therefore, we will address whether petitioner rebutted the presumption of reasonable assistance where there was no indication that postconviction counsel knew the claim to be frivolous.

¶ 17                                    I. Post-Conviction Hearing Act

¶ 18        The Act provides a procedural mechanism for a convicted criminal defendant to assert "that *** in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2016); *People v. Dupree*, 2018 IL 122307, ¶ 28. Proceedings under the Act are not a continuation of nor an appeal from the original case but consist of a collateral attack on the criminal conviction. *People v. Harris*, 224 Ill. 2d 115, 124 (2007). The collateral attack is limited in scope to constitutional matters that have not been, and could not have been, previously adjudicated. *Id.* "Any issues that could have been raised on direct appeal, but were not, are procedurally defaulted, and any issues that have previously been decided by a reviewing court are barred by *res judicata.*" *Id.* at 124-25 (citing *People v. Rissley*, 206 Ill. 2d 403, 412 (2003)).

¶ 19        We begin with a brief review of the legal principles governing proceedings under the Act. The Act provides a three-stage process for adjudicating postconviction petitions. *People v. Custer*, 2019 IL 123339, ¶ 29. At the first stage, the circuit court is directed to independently assess the petition and dismiss the petition if the court determines that the petition is "frivolous" or "patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2016). A postconviction petition advances beyond the first stage in one of two ways. First, it advances if it is reviewed by the circuit court as mandated by the Act and is not dismissed as frivolous or patently without merit. *People v. Urzua*, 2023 IL 127789, ¶ 32. Alternatively, a postconviction petition advances to the second stage if the circuit court fails to rule on the petition within the 90-day period required by the Act. *Id.*; 725 ILCS 5/122-2.1(a) (West 2016)). It is at the second stage that an indigent defendant may request appointment of counsel and that the State answers or moves to dismiss the petition. 725 ILCS 5/122-4, 122-5 (West 2016). If the allegations in the petition, supported by "affidavits, records, or other evidence" make a substantial showing of a deprivation of constitutional rights, the petition will advance to a third stage for an

evidentiary hearing. *Id.* § 122-2; *Harris*, 224 Ill. 2d at 126.

¶ 20                    II. Reasonable Assistance Under the Act

¶ 21    There is no constitutional right to counsel in proceedings under the Act; rather, the right to counsel is "a matter of legislative grace," derived from the Act. *Custer*, 2019 IL 123339, ¶ 30. The standard under the Act is that a petitioner is entitled to reasonable assistance of counsel, which is "a standard that is significantly lower than the one mandated at trial by our state and federal constitutions." *Id.* We have explained that this lesser level of assistance is rational because of the different posture of postconviction proceedings. *People v. Addison*, 2023 IL 127119, ¶ 19. While a defendant is presumed innocent prior to trial, a postconviction petitioner has already been stripped of the presumption of innocence. *Id.* Since the petitioner, rather than the State, initiates the proceeding by claiming that constitutional violations occurred at trial, counsel's role is to "shape their complaints into the proper legal form and to present those complaints to the court" rather than to "protect postconviction petitioners from the prosecutorial forces of the State." *Id.*

¶ 22    To ensure that postconviction petitioners receive reasonable assistance, Rule 651(c) delineates specific duties that postconviction counsel must undertake in postconviction proceedings. *Suarez*, 224 Ill. 2d at 42. Counsel is required to certify that counsel has consulted with the petitioner to ascertain his contentions of deprivation of constitutional rights, examined the record of the proceedings and the trial, and made any amendments to the *pro se* petition that are necessary to adequately present the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Custer*, 2019 IL 123339, ¶ 32. Amendments that would "only further a frivolous or patently nonmeritorious claim *** are not 'necessary' " under Rule 651(c). *Greer*, 212 Ill. 2d at 205. Counsel's certification that he or she complied with those duties creates a rebuttable presumption that counsel provided the petitioner "a reasonable level of assistance." *Urzua*, 2023 IL 127789, ¶ 54.

¶ 23    Petitioner acknowledges that his postconviction counsel filed a Rule 651(c) certificate. Consequently, counsel is presumed to have provided reasonable assistance, and the burden is on petitioner to rebut that presumption. See *Addison*, 2023 IL 127119, ¶ 21. Petitioner contends that he rebutted the presumption by showing that postconviction counsel did not make all necessary amendments to the

*pro se* petition. Alternatively, petitioner argues that he rebutted the presumption because, if postconviction counsel could not amend the *pro se* petition and the petition was frivolous, then appointed counsel had an obligation to withdraw.

¶ 24    Postconviction counsel certified that she made any amendments to the *pro se* petition that were necessary to adequately present petitioner's *Apprendi* claim. It is presumed from the lack of an amendment that there were none to be made. See *People v. Perkins*, 229 Ill. 2d 34, 50 (2007). Notably, petitioner does not identify any necessary amendments to his *pro se* petition that could have been made by counsel to allow the petition to survive dismissal. Rather, he argues on appeal that his *Apprendi* claim is frivolous.

¶ 25    On that basis—that his *Apprendi* claim is frivolous and could not be amended to state a claim—petitioner argues that postconviction counsel could not present the *pro se* claim to the court and had to withdraw as counsel. The State responds that counsel was only required to make the amendments necessary to shape petitioner's claims into the proper legal form but was not required to make frivolous amendments or find new claims beyond those identified by petitioner. Counsel's Rule 651(c) certificate created the presumption that no amendments were available. Petitioner failed to rebut the presumption by identifying anything in the record that shows that counsel failed to make a necessary amendment or suggesting any amendments counsel could have made. Also, the State contends that *Greer* and the rules of ethics do not prevent counsel from bringing claims that counsel believes are meritless; instead, counsel is prevented from bringing patently without merit or frivolous claims. Nothing in the record suggests that counsel believed that the petition was frivolous, such that she would be ethically bound to withdraw.

¶ 26                        III. *Greer*

¶ 27    We begin by reviewing our decision in *Greer*. In that case, like the instant case, the petitioner filed a *pro se* postconviction petition that advanced to the second stage by default, and postconviction counsel was appointed. A few months later and after reviewing the petitioner's *pro se* petition, postconviction counsel filed a motion to withdraw. In the motion, counsel stated that he had reviewed the record, the transcripts of proceedings, and the State's Attorney's files and had interviewed all relevant parties, including the petitioner, but could find no basis on which to

present any meritorious issue for review. Counsel supported his motion to withdraw with a brief purporting to comply with *Anders v. California*, 386 U.S. 738 (1967). Following a hearing, the circuit court granted counsel's motion to withdraw but also *sua sponte* dismissed the petitioner's postconviction petition. Before this court, the petitioner's sole argument was that the circuit court erred in granting counsel's motion to withdraw. According to the petitioner, because nothing in the Act specifically allows for the withdrawal of appointed counsel, the circuit court had no authority to grant such relief and in doing so denied the petitioner his statutory right to counsel. We rejected this argument, acknowledging that, when a petition automatically advances to the second stage without review by a circuit court, the petition "may well be frivolous or patently without merit." *Greer*, 212 Ill. 2d at 204. Nothing in the Act prevented postconviction counsel from moving to withdraw if he or she determined that the petition was frivolous or patently without merit and that the attorney's ethical obligations therefore prohibited him or her from continuing representation. *Id.* at 209.

¶ 28       The holding in *Greer* was so limited, but we also posited this question: "What is defense counsel to do after he or she determines that defendant's petition is frivolous? Is counsel to stand mute at all subsequent proceedings? How can counsel, ethically, 'present the petitioner's contentions' when counsel *knows* those contentions are frivolous?" (Emphasis in original.) *Id.* at 206. Our answer to that hypothetical question in *Greer* was that counsel could not continue to present a petitioner's known frivolous claims. *Id.* If appointed counsel *knows* that the contentions are patently without merit or wholly frivolous, counsel has an ethical duty to not "needlessly consum[e] the time and energies of the court and the State by advancing frivolous arguments." *Id.* at 207; see also *Urzua*, 2023 IL 127789, ¶ 37 (citing *Greer* for the proposition that advancing frivolous or spurious claims violates counsel's ethical duties).

¶ 29       Our hypothetical in *Greer* suggests that, if appointed counsel knows that a petitioner's claims were frivolous or patently without merit, then counsel has an ethical duty to withdraw. However, that is not the state of the case before this court. Nothing in the record suggests that postconviction counsel knew that the petition was frivolous or patently without merit. See Black's Law Dictionary (11th ed. 2019) ("frivolous" is defined as "[l]acking a legal basis or legal merit; manifestly insufficient as a matter of law" and "patent" means "[o]bvious; apparent"). Also,

the court, not counsel, is the ultimate arbiter of whether "the claims in the petition are meritorious." *Urzua*, 2023 IL 127789, ¶ 41. Different counsel may differ in their opinions regarding the merits of the petition. *Id.* ¶¶ 11, 16 (appointed counsel filed a motion to withdraw pursuant to *Greer*, but later retained counsel adopted the same *pro se* petition).

¶ 30    In this case, petitioner presented a single *Apprendi* claim. That claim had already been rejected on direct appeal and in a proceeding under section 2-1401 of the Code. However, petitioner argued that the law regarding *Apprendi* had changed since those decisions, so *res judicata* did not prevent his claim. The *pro se* petition also presented a defense to the timeliness basis for dismissal. While petitioner's claim was ultimately unsuccessful, there is no indication that appointed counsel "knew" that the claim was "frivolous and patently without merit." Since there is no indication in the record that postconviction counsel knew, or even believed, that petitioner's claim was frivolous or patently without merit, we do not reach the issue exactly as posed in the petition for leave to appeal. Instead, we ask and answer this question, which is ancillary to the question that we raised in *Greer*: Must postconviction counsel, who was appointed without a first-stage ruling by the circuit court, move to withdraw when petitioner's *pro se* petition posits a weak legal claim but the claim is presented in the best possible legal form and there is no indication that counsel knew the claim was frivolous? We find that, under those circumstances, counsel has no duty to withdraw.

¶ 31    Petitioner also argues that postconviction counsel did not challenge the motion to dismiss. That is not an accurate statement of the proceedings below. While postconviction counsel did not file a separate response to the motion to dismiss, she rested on the allegations in the *pro se* petition, which specifically addressed the grounds for dismissal. This is not a situation where postconviction counsel confessed to the motion to dismiss or informed the court that petitioner's contentions had no merit. See, *e.g.*, *Shortridge*, 2012 IL App (4th) 100663, ¶¶ 14-15 (if appointed counsel believed that defendant's claims were frivolous, counsel should have moved to withdraw rather than confessed to the motion to dismiss); *Elken*, 2014 IL App (3d) 120580, ¶ 36 (same).

¶ 32    Since we have concluded that appointed counsel provided reasonable assistance to petitioner, we do not reach petitioner's argument that he was denied procedural

due process.

¶ 33                                CONCLUSION

¶ 34        We conclude that petitioner did not rebut the presumption of reasonable assistance. Postconviction counsel's Rule 651(c) certificate created a presumption that no required amendments were available. There was no showing that postconviction counsel knew that petitioner's claim was frivolous or patently without merit. Under these circumstances, where petitioner has not identified any amendment necessary to adequately present his *Apprendi* claim and where there was no indication that appointed counsel knew the claim was frivolous, rather than merely weak, there was no obligation for appointed counsel to withdraw. Thus, we affirm the judgment of the appellate court, which affirmed the judgment of the circuit court dismissing petitioner's postconviction petition.

¶ 35        Judgments affirmed.