2024 IL App (1st) 221579-U

SECOND DIVISION
March 29, 2024

No. 1-22-1579

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 826501 |
| | ) | |
| PONNELL BUCHANAN, | ) | Honorable |
| | ) | Michael Hood, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justice Ellis concurred in the judgment.
Presiding Justice Howse specially concurred.

**ORDER**

¶ 1    *Held*:   No error occurred in the second stage dismissal of defendant's postconviction petition where defendant received reasonable assistance from his appointed postconviction counsel.

¶ 2    Defendant Ponnell Buchanan appeals the trial court's second stage dismissal of his postconviction petition, arguing that his postconviction counsel provided unreasonable assistance under Illinois Supreme Court Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)) because postconviction counsel failed to: (1) include a nonfrivolous claim related to defendant's

guilty plea, (2) shape defendant's claims of ineffective assistance of plea counsel into the proper legal form, and (3) attach a verification affidavit.

¶ 3    In May 2010, defendant was charged by information with armed robbery, aggravated kidnaping, aggravated vehicular hijacking, vehicular invasion, possession of a stolen motor vehicle, and aggravated unlawful restraint arising out of incident that occurred on April 18, 2010. In June 2010, a behavior clinical exam (BCX) was ordered for defendant. He was subsequently found unfit to stand trial and was committed to the Department of Human Services (DHS) for one year. In June 2011, DHS informed the trial court that defendant was then fit to stand trial. In September 2011, the Forensic Clinical Services filed its report finding that defendant was fit to stand trial and that defendant was legally sane at the time of the alleged offenses.

¶ 4    In February 2013, the State filed notice of its intent to seek a natural life sentence pursuant to section 5-4.5-95(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-95(a) (West 2010)) because defendant had two prior Class X convictions for armed robbery. Defendant's first armed robbery conviction was from 1990 and he received a sentence of six years. He was later convicted in 2001 for armed robbery under six separate cases and received concurrent sentences of 24 years for each case.

¶ 5    In June 2013, defendant's plea counsel informed the court that defendant wished to accept an offer from the State to plead guilty to lesser charges in exchange for a total sentence of 60 years, to be served at 50 percent. Counsel also disclosed that the public defender's office spent private monies to resolve the issue of defendant's sanity. Counsel spoke with defendant prior to the hearing and counsel described defendant as "very clear, he was very concise with regards to his decision as to getting this matter over with." The State confirmed its offer to reduce the armed robbery charge to aggravated robbery and that defendant would also plead

guilty to vehicular invasion. Both charges were Class 1 offenses. The court addressed defendant and confirmed that defendant understood the plea agreement. The court further admonished defendant that based on defendant's background, he was subject to Class X sentencing with a range of 6 to 30 years, and defendant confirmed that he understood. The court also admonished defendant that the 30-year terms would be served consecutively for a total of 60 years and defendant would be entitled to day-for-day credit, and defendant again indicated his understanding.

¶ 6    The trial court admonished defendant about his right to stand trial and trial by jury and that by pleading guilty, he was waiving those rights. Defendant responded that he understood. The State then detailed the following factual basis.

> "[I]f this case went to trial, it would be stipulated by and between the parties that Rosa Smith would testify and tell your Honor that on April 18th of 2010 she was the owner of a 2004 Cadillac; that she was operating that vehicle in the 1500 block of North Lotus on that date at about 12:30 in the afternoon when the defendant, whom she would identify in open court, and another came along indicating that they were armed with a firearm. The defendant entered the vehicle, drove away with her still in the vehicle, and she was able to jump out. Her purse and its contents, including a driver's license, credit card, and other items, were in the car.
>
> The -- she contacted the police. And the police were able to use OnStar to locate the car, which at -- by this point was empty. They set up a surveillance [*sic*]. The defendant, whom the officers, including Officer Castanza, Sergeant Stack, Officer Diaz, would testify and would identify the defendant, exited a

house and went into the vehicle. A small chase ensued. Defendant crashed the car. He was apprehended and found to have in his possession her driver's license as well as a credit card. Miss Smith would tell you she didn't give consent for him to have any of these items or to enter her vehicle with any part of his body."

¶ 7 The court then imposed the sentence as agreed by the parties. The court further questioned defendant if he had any questions concerning his plea or sentence, and defendant responded that he did not. The court also asked if defendant was satisfied with his attorney and defendant answered, "No. Not really no." When the court then asked if defendant wished "to stand on this plea of guilty," defendant responded, "Yes, I accept the plea. But am I satisfied? No, no, but I'm accepting it at the same time." Defendant further confirmed that his counsel explained everything to him regarding the plea.

¶ 8 On October 3, 2014, defendant filed his *pro se* postconviction petition, as well as a *pro se* petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)).[1] In his postconviction petition, defendant raised two claims related to the ineffective assistance of his plea counsel. First, he contended that he was denied due process, equal protection, and his right to a fair trial because he sought to discharge his appointed public defender for failing to communicate with him in a reasonable manner and failing to prepare a defense but the trial court "refused to conduct any inquiry" into his allegations of ineffective assistance. Second, he asserted the following claims of ineffective assistance of plea counsel: (1) counsel's failure to object and to not allow defendant to plead guilty and then counsel allowed defendant to be "erroneously" sentenced to two consecutive terms of 30 years; (2) counsel failed to prevent defendant's misunderstanding of the law and apprise him that he "could not be

---

[1] Defendant has not appealed the dismissal of his petition for relief from judgment.

4

sentenced and/or subjected to consecutive sentencing," and (3) counsel allowed defendant's sentences to be doubly enhanced because he was sentenced as a Class X offender with the terms to be served consecutively. Defendant signed and swore his petition before a notary. He did not attach any other documentation to his petition. Defendant cited sentencing statutes, but he did not cite any case law in support of his claims. Defendant's 2-1401 petition alleged that his sentence was null and void because he received a doubly enhanced sentence.

¶ 9       On December 31, 2014, the trial court docketed defendant's petition without comment. Postconviction counsel filed her appearance for defendant on January 23, 2015. On December 31, 2020, postconviction counsel filed her certificate in accordance with Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)) that day. Counsel's Rule 651(c) certificate was filed and stated:

> "1. I have consulted with the petitioner, **PONNELL BUCHANAN** by letter and/or by phone to ascertain his contentions of deprivations of constitutional rights;
>
> 2. I have reviewed the trial file of the Public Defender[].
>
> 3. I have reviewed Cook County Hospital records.
>
> 4. I reviewed Chester Mental Health Hospital medical records.
>
> 5. I have reviewed medical records from the Illinois Department of Corrections medical records.
>
> 6. I have reviewed the results of the original Behavioral Clinical Examination.
>
> 7. I after receiving authorization from Mr. Buchanan, I forwarded Mr. Buchanan's medical history/records to Dr. J.L., a clinical psychologist for medical

review. She did not find anything irregular with the previous psychological conclusions of fitness.

7. [*sic*] I have obtained and examined the transcript of his guilty plea and sentencing in this case;

8. [*sic*] I have not filed an Amended Petition for Post-Conviction Relief. The pro se petition for relief does adequately sets [*sic*] forth the petitioner's claims of deprivation of his constitutional rights."

¶ 10    In April 2022, the State filed a motion to dismiss defendant's postconviction petition and argued that defendant's petition should be dismissed because (1) he failed to attach a verification affidavit; (2) his claim that the trial court failed to address his assertion of ineffective assistance of plea counsel is insufficient and lacks any details to discern his complaint regarding his attorney; and (3) his claims of ineffective assistance of plea counsel lacked merit because his claims are premised on the assumption that his sentence was unlawful, but that assumption was incorrect. At the next status hearing, postconviction counsel asked for time to review the State's motion for her to determine if she needed to file a response. At the June 2022 status hearing, postconviction counsel informed the court that she had "nothing further to add."

¶ 11    In October 2022, the trial court conducted the second stage postconviction hearing and heard arguments on the State's motion to dismiss. Defendant was present in court for the hearing. Postconviction counsel made the following statement regarding defendant's petition.

"With regards to Mr. Buchanan's pro se petition, I did not supplement that, because based upon the things that I had discovered, I conducted with Mr. Buchanan to find out exactly what was going on.

And I reviewed this file of the Public Defender's Office. I reviewed the records from Cook County Hospital. I reviewed the Chester Mental Health, Chester Mental Health [*sic*] records. I reviewed the results of the original behavioral clinical examination after authorization from Mr. Buchanan. I reviewed his medical history from the doctor that we obtained to review the clinical psychologist Dr. JL to review his medical – his medical records. She did not find anything irregular with regards to the previous psychological conclusions of fitness that were obtained.

I examined -- I obtained and examined the transcript of Mr. Buchanan's guilty plea and sentencing. And as a result of all of those things listed previous, I did not file a supplement to the pro se petition."

¶ 12    The State restated its arguments from the motion to dismiss. Following the State's argument, the court gave defendant the opportunity to address the court. Defendant informed the court that he was "ignorant of the law," he was "poor," and he "suffer[s] from schizophrenia." He alleged that during sentencing, his plea counsel "typed out a paper for [him] to read" and he read that paper before the judge and plea counsel "took advantage of [his] mental ill condition." He asserted that counsel told him that he "would be out soon and to read that paper ***."

¶ 13    Defendant further detailed his prior mental health issues in seeking treatment in 2009 and 2010, prior to the commission of the offenses in this case. He stated that at that time, he "was not in [his] right mind," but a doctor said he was malingering.

¶ 14    When the court reminded defendant that the proceeding was regarding his postconviction petition, defendant responded, "I paid a guy to do that for me because I didn't know nothing about that." Postconviction counsel interrupted defendant to clarify defendant's claims. Counsel also repeated that she had a psychologist review defendant's record and the psychologist did not find

support that defendant was unfit. The trial court then granted the State's motion to dismiss. In its ruling, the court noted that it had reviewed the "voluminous case file," read the transcripts, and "listened closely" to the arguments, including defendant's statements. The court found defendant received the benefit of the bargain in his plea agreement with the State. The court made extensive findings on the record.

"Mr. Buchanan, you were initially charged with armed robbery, agg kidnaping, aggravated vehicular hijacking, unlawful vehicular invasion, possession of a stolen motor vehicle, and aggravated unlawful restraint.

On June 27th of 2013, you were in front of Judge Sullivan with your attorney, and you entered a plea of guilty to the reduced charge of aggravated -- strike that -- the reduced charge of aggravated robbery and vehicular invasion.

Now in exchange for that, before that was reduced, the sentence could have been natural life. The bargain that you received, albeit you disagree that it was a bargain, the bargain you did receive under the law, as I read it, was two 30-years sentences to be served consecutively. The remaining counts were then dismissed. It was a day-for-day credit sentence. ***

Prior to those reductions, prior to that effort by the State, and I'm inferring the work of your attorney, to get them to come off the natural life, that would be [plea counsel], that it would have been a natural life. But the plea was to those two cases. Now those two charges were Class 1's, but based on your background, you were sentenced as Class X offender 6 to 30.

Now, the Post-Conviction Act requires the petition to be verified by affidavit and have attachments in the form of affidavits, records, or other evidence supporting the allegations. The verification affidavit is a separate requirement

8

from the supporting attachments. It may not be satisfied by one of the two alone. Mr. Buchanan in this case didn't provide verification affidavit or affidavits or records or other evidence. There's been argument, but I have no other evidence. Based on that technicality, the PC would be denied.

But I want to go on and talk about the other claims or assertions you make. Your first claim is that you were denied due process and equal protection, and as every knows a PC is a – you need a Constitutional violation, so this gives you entre [*sic*] into PC world because of those words.

Your claim is that you were denied a right to a fair trial because your court-appointed attorney refused to communicate with you in a reasonable manner or prepare a defense.

I've looked at the claim for ineffective assistance of counsel. You do not address either one. I mentioned that case of [*Strickland v. Washington*, 466 U.S. 668 (1984)]. That's the seminal case in ineffective assistance of counsel. You don't address any of the elements of Strickland, nor is there an affidavit detailing the ineffectiveness claimed.

What I have in front of me is an attorney who negotiated a natural life sentence down to a sentence of years with the opportunity to get out of prison. There's no cause of action. There's no legal theory. That claim, that first claim, would be denied.

The second assertion is that [plea counsel] was ineffective for allowing you to accept a plea offer, which included a sentence that was not authorized by law, or for failing to educate you on consecutive sentencing, as it applied to your

charge, or for allowing the sentence to be doubly enhanced. This is not a double enhancement case. And the State's pleadings and arguments are clear on setting forth exactly why.

There was no double enhancement. So your attorney has no grounds to challenge a double enhancement because a double enhancement doesn't exist. The sentence is authorized -- it is an authorized sentence under the law.

You were previously convicted of armed robbery in 1990. You were convicted, after release from the penitentiary, convicted of a second armed robbery in 2001, along with series of other armed robberies. Had you been convicted of the armed robbery which you were charged before the amendment, you could have been subject to a mandatory life sentence.

Instead, you chose, based on the transcript, to plead guilty to that reduced charge of two Class 1 offenses: The agg robbery and the vehicular invasion.

You were a Class X offender by background, sir. And although the sentence is the maximum 30 years, it's an authorized sentence. And it's a sentence that you agreed to in open court with the Honorable Judge Sullivan.

The Court had the discretion under the law to make these sentences consecutive. 730 ILCS 5/5-8-4(c) allows consecutive sentence if, and I'm reading from the statute: 'Having regard to the nature and circumstances of the offense and the history and character of the defendant, it is the opinion of the court that consecutive sentences are required to protect the public from further criminal conduct by the defendant.'

That's very different than saying you can't be rehabilitated. That's saying that you're a danger to the public based on your background.

The prosecution cited that in that -- with regard to consecutive sentencing, the six armed robberies for which you were convicted from *** 1996, as well as a PSMV, possession of a stolen motor vehicle, out of DuPage County from 1999. And the trial court specifically went over this with you in the plea. It's in there. ***

On Page 8 of the transcript, Judge Sullivan went over that exact language with you. And she stated: Do you understand that? And you stated, you did.

Again, there's no constitutional violation. And so your second claim would be dismissed as well."

¶ 15    This appeal followed.

¶ 16    On appeal, defendant argues that he received unreasonable assistance from his postconviction counsel. Specifically, defendant contends that: (1) counsel failed to amend his petition to include a nonfrivolous claim that his guilty plea was not made knowingly or voluntarily because the parties and the court erroneously informed defendant that he was subject to a mandatory natural life sentence; (2) counsel failed to shape defendant's claims of ineffective assistance of plea counsel into the proper legal form; and (3) counsel failed to attach a verification affidavit. The State maintains that postconviction counsel provided reasonable assistance to defendant as required under Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)).

¶ 17    The Post-Conviction Act (the Act) provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. 725 ILCS 5/122-1(a) (West 2018); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief

is limited to constitutional deprivations that occurred at the original trial. *Id.* at 380. A proceeding brought under the Act is not an appeal of a defendant's underlying judgment, instead it is a collateral attack on the judgment. *People v. Evans*, 186 Ill. 2d 83, 89 (1999).

¶ 18     At the first stage, the circuit court must independently review the postconviction petition to determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). A postconviction petition advances beyond the first stage in one of two ways. *People v. Huff*, 2024 IL 128492, ¶ 19.  "First, it advances if it is reviewed by the circuit court as mandated by the Act and is not dismissed as frivolous or patently without merit." *Id*. (citing *People v. Urzua*, 2023 IL 127789, ¶ 32). Second, a postconviction petition advances to the second stage if the circuit court fails to rule on the petition within the 90-day period required by the Act. *Id.*; see also 725 ILCS 5/122-2.1(a) (West 2018).

¶ 19     At the second stage, the defendant may request counsel to be appointed to represent him or her, if necessary (725 ILCS 5/122-4 (West 2018)), and the State is allowed to file responsive pleadings (725 ILCS 5/122-5 (West 2018)). At this stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. See *Coleman*, 183 Ill. 2d at 381. If no such showing is made, the petition is dismissed. If a substantial showing of a constitutional violation is set forth, then the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2018).

¶ 20     Here, the trial court docketed defendant's petition for second stage review on December 31, 2014, which was within the 90-day statutory period. Postconviction counsel was subsequently appointed in January 2015.

¶ 21     "There is no constitutional right to counsel in proceedings under the Act; rather, the right

to counsel is 'a matter of legislative grace,' derived from the Act." *Huff*, 2024 IL 128492, ¶ 21 (quoting *People v. Custer*, 2019 IL 123339, ¶ 30). Further, "a defendant in postconviction proceedings is entitled to only a 'reasonable' level of assistance, which is less than that afforded by the federal or state constitutions." *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). "[T]he distinction is rational 'because trial counsel plays a different role than counsel in post-conviction proceedings.' " *People v. Addison*, 2023 IL 127119, ¶ 19 (quoting *People v. Owens*, 139 Ill. 2d 351, 364 (1990)). "While a defendant is presumed innocent prior to trial, a postconviction petitioner has already been stripped of the presumption of innocence." *Huff*, 2024 IL 128492, ¶ 21. "Since the petitioner, rather than the State, initiates the proceeding by claiming that constitutional violations occurred at trial, counsel's role is to 'shape their complaints into the proper legal form and to present those complaints to the court' rather than to 'protect postconviction petitioners from the prosecutorial forces of the State.' " *Id.* (quoting *Addison*, 2023 IL 127119, ¶ 19).

¶ 22    "To ensure that postconviction petitioners receive reasonable assistance, Rule 651(c) delineates specific duties that postconviction counsel must undertake in postconviction proceeding." *Id.* ¶ 22. Rule 651(c) provides that postconviction counsel file a certificate stating that he or she (1) consulted with the defendant to ascertain his contentions of deprivation of constitutional right, (2) examined record of the proceedings at the trial, and (3) amended the defendant's *pro se* petition, if necessary, to ensure that defendant's contentions are adequately presented. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). "The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that post-conviction counsel provided reasonable assistance." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. "It is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties

13

mandated by Rule 651(c)." *Id.* We review whether counsel substantially complied with Rule 651(c) *de novo. People v. Bass*, 2018 IL App (1st) 152650, ¶ 13. Under a *de novo* standard, we give no deference to the trial court's judgment or reasoning. *People v. Carlisle*, 2019 IL App (1st) 162259, ¶ 68. "*De novo* consideration means that the reviewing court performs the same analysis that a trial judge would perform." *Id.*

¶ 23    As previously stated, postconviction counsel filed her Rule 651(c) certificate in December 2020, which set forth:

> "1. I have consulted with the petitioner, **PONNELL BUCHANAN** by letter and/or by phone to ascertain his contentions of deprivations of constitutional rights;
>
> 2. I have reviewed the trial file of the Public Defender[].
>
> 3. I have reviewed Cook County Hospital records.
>
> 4. I reviewed Chester Mental Health Hospital medical records.
>
> 5. I have reviewed medical records from the Illinois Department of Corrections medical records.
>
> 6. I have reviewed the results of the original Behavioral Clinical Examination.
>
> 7. I after receiving authorization from Mr. Buchanan, I forwarded Mr. Buchanan's medical history/records to Dr. J.L., a clinical psychologist for medical review. She did not find anything irregular with the previous psychological conclusions of fitness.
>
> 7. [*sic*] I have obtained and examined the transcript of his guilty plea and sentencing in this case;

14

8. [*sic*] I have not filed an Amended Petition for Post-Conviction Relief. The pro se petition for relief does adequately sets [*sic*] forth the petitioner's claims of deprivation of his constitutional rights."

¶ 24   Defendant first contends that postconviction counsel was unreasonable for failing to raise a new argument that the parties at defendant's plea hearing "were mistaken" that defendant was facing a mandatory natural life sentence if convicted of the more serious charge of armed robbery. According to defendant, the "entire" basis of the State's plea concession was "illusory" because one of his prior Class X convictions occurred when he was 16 years and is no longer classified as a qualifying offense under the habitual criminal statute. See 730 ILCS 5/5-4.5-95 (West 2022). Defendant asserts that because he was "improperly induced" to plead guilty, his plea was not voluntarily or intelligently made. The State responds that defendant was correctly informed of the potential sentencing ramifications in effect at the time of his plea and accordingly, postconviction counsel was not obligated to raise this additional claim.

¶ 25   "Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf. If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). The supreme court has "repeatedly held that the purpose of Rule 651(c) is to ensure that counsel shapes the petitioner's claims into proper legal form and presents those claims to the court." *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007) (citing *People v. Pinkonsly*, 207 Ill. 2d 555, 568 (2003), quoting *People v. Owens*, 139 Ill. 2d 351, 364-65 (1990)).

¶ 26   Additionally, the supreme court in *Pendleton* observed that " 'post conviction counsel is only required to investigate and properly present the *petitioner's* claims.' " (Emphasis in

original.) *Pendleton*, 223 Ill. 2d at 472 (quoting *Davis*, 156 Ill. 2d at 164). "Rule 651(c) only requires postconviction counsel to examine as much of the record 'as is necessary to adequately present and support those constitutional claims raised by the petitioner.' " *Id*. at 475 (quoting *Davis*, 156 Ill. 2d at 164). "Postconviction counsel is not required to comb the record for issues not raised in the defendant's *pro se* post-conviction petition." *People v. Helton,* 321 Ill. App. 3d 420, 424-25 (2001). A postconviction petitioner is "not entitled to the advocacy of counsel for purposes of exploration, investigation and formulation of potential claims." *Davis*, 156 Ill. 2d at 163.

¶ 27    In his *pro se* petition, defendant argued that his plea counsel was ineffective because she allowed defendant to be "erroneously" sentenced to two 30-year terms, to be served consecutively, which he contended was not "authorized by statute." Defendant specifically focused on the trial court's imposition of consecutive sentences pursuant to section 5-8-4(c)(1) of the Code and contended that his sentences had been improperly "doubly enhanced." See 730 ILCS 5/5-8-4(c)(1) (West 2012).

¶ 28    According to defendant, postconviction counsel should have been able to ascertain from reading these claims by defendant as well as the transcripts from the June 2013 plea hearing that the habitual criminal statute did not apply to one of his prior convictions. Defendant points to his 1990 conviction for armed robbery that was committed when he was 16 years old and relies extensively on the supreme court's decision in *People v. Stewart*, 2022 IL 126116.

¶ 29    In *Stewart*, the court considered "whether the legislature intended a prior felony conviction to be a qualifying offense for Class X sentencing if the same offense would have resulted in a juvenile adjudication had it been committed on the date of the present offense." *Id.* ¶ 16. The *Stewart* court held that the defendant's "conviction for an offense committed when he

was 17 years old was not a qualifying offense for Class X sentencing under the [relevant] version of section 5-4.5-95(b) of the Code." *Id.* ¶ 22. Defendant argues that based on the holding in *Stewart*, he "did not receive the benefit of any bargain as the general recidivism provisions of the [Code] did not apply to his prior conviction for an offense committed when he was a juvenile."

¶ 30     The supreme court in *Stewart* relied on the legislature's recent amendment to the habitual criminal statute. *Id.* ¶19. "Public Act 101-652 (eff. July 1, 2021) amended section 5-4.5-95(b)(4) of the Code to provide that the first qualifying offense for Class X sentencing must have been 'committed when the person was 21 years of age or older.' " *Id.* (quoting Pub. Act. 101-652 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(b)(4))). While the *Stewart* court's analysis focused on subsection (b) of the habitual criminal statute, the same amendments were made to subsection (a), which is at issue here. Public Act 101-652 added the following limiting language that the section would not apply unless "The first offense was committed when the person was 21 years of age or older." Pub. Act 101-652 (eff. July 1, 2021). Defendant thus asserts that his 1990 armed robbery conviction was not a proper predicate offense for sentencing under the habitual criminal statute.

¶ 31     However, the flaw in defendant's argument is that at the time of his plea agreement, no age-related requirements existed to limit the adjudication of an habitual criminal. Defendant's plea predated both *Stewart* and Public Act 101-652 by several years.  In June 2013, the habitual criminal statute stated:

> "Every person who has been twice convicted in any state or federal court
> of an offense that contains the same elements as an offense now (the date of the
> offense committed after the 2 prior convictions) classified in Illinois as a Class X
> felony, criminal sexual assault, aggravated kidnapping, or first degree murder, and

who is thereafter convicted of a Class X felony, criminal sexual assault, or first degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal." 730 ILCS 5/5-4.5-95(a)(1) (West 2012).

Under this statute, "Except when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to a term of natural life imprisonment." *Id*. §5-4.5-95(a)(5). Armed robbery was a Class X felony. See 720 ILCS 5/18-2(b) (West 2012). As previously observed, defendant had two prior armed robbery convictions from 1990 and 2001. Thus, under the plain language of the habitual criminal statute, defendant could have received a natural life sentence if convicted of the armed robbery charge.

¶ 32 Defendant's argument fails because his assertion would have required postconviction counsel to be clairvoyant regarding both legislation and case law that did not exist. Public Act 101-652 was not signed by Governor Pritzker until February 22, 2021, nearly two months after postconviction counsel filed her Rule 651(c) certificate. Additionally, the supreme court's decision in *Stewart* was not issued until October 20, 2022, six days after the trial court dismissed defendant's postconviction. We cannot say that postconviction counsel was unreasonable for failing to raise new arguments for which the authority did not exist. See *People v. Morgan*, 2015 IL App (1st) 131938, ¶ 77 ("Counsel cannot be deemed ineffective for failing to investigate witnesses that she did not know existed" and accordingly, "effective counsel need not be clairvoyant").

¶ 33 Defendant also argues that the Juvenile Court Act of 1987 (Juvenile Court Act) does not now classify his 1990 armed robbery as an exception to juvenile jurisdiction, and therefore, would not qualify as a predicate offense under the habitual criminal statute. 705 ILCS 405/5-130(a)(1) (West 2022). Defendant's argument lacks merit. At the time of defendant's plea,

section 5-130(a)(1) of the Juvenile Court Act specifically included "armed robbery when the armed robbery was committed with a firearm" as one of the enumerated crimes excluded from juvenile jurisdiction and subject to prosecution under the criminal law of the State. 705 ILCS 405/5-130(a)(1) (West 2012). No objection was made regarding the applicability of the 1990 armed robbery conviction as a predicate offense, which was included in both the February 2013 notice by the State to seek a natural life sentence and recounted in open court at the plea hearing.

¶ 34    In his reply brief, defendant contends for the first time that the 1990 armed robbery conviction "may or may not *now* be classified as a Class X felony." According to defendant, the armed robbery statute in effect when defendant was convicted in 1990 did not differentiate between being armed with a dangerous weapon and armed with a firearm. See Ill. Rev. Stat. 1985, ch. 38, ¶ 18-2. Section 18-2 was amended in 2000 to include separate subsections for a dangerous weapon other than a firearm under 18-2(a)(1) and a firearm under 18-2(a)(2). See 720 ILCS 5/18-2 (West 2000). Defendant's argument is based on speculation that the 1990 conviction did not involve a firearm. However, we need not consider this claim because this argument was not raised in defendant's opening brief. "Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). Accordingly, defendant has forfeited this argument on appeal.

¶ 35    Therefore, we find that defendant has failed to rebut the presumption that postconviction counsel substantially complied with Rule 651(c) and provided reasonable assistance because postconviction counsel was not obligated to raise new claims in an amended or supplemental petition.

¶ 36    Defendant next asserts that his postconviction counsel provided unreasonable assistance in violation of Rule 651(c) because she failed to shape his claims into viable constitutional

issues. According to defendant, his own remarks at the hearing on the motion to dismiss demonstrated that nonfrivolous factual support for his claims existed. Specifically, he points to his comments that his plea counsel was ineffective for failing to prepare a defense and to prevent defendant's misunderstanding of the law, as well as defendant's assertions that he was suffering a mental health crisis at the time of the offenses and his plea was made unknowingly. The State maintains that amendments to a *pro se* petition are not necessary when it would only advance frivolous claims.

¶ 37     Recently, the supreme court in *People v. Huff* considered whether postconviction counsel is obligated to amend frivolous claims or seek to withdraw. *Huff*, 2024 IL 128492, ¶ 13. In that case, the defendant filed a *pro se* postconviction petition arguing that "his natural life sentence, based on the trial judge's finding that the offense was 'exceptionally brutal and heinous,' was unconstitutional under *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)]." *Id*. ¶ 8. The petition automatically advanced to the second stage without review by the trial court. *Id*. ¶ 9. The appointed postconviction counsel did not amend the defendant's petition, filed a Rule 651(c) certificate, and did not make any additional arguments at the subsequent hearing on the State's motion to dismiss. *Id*. The trial court dismissed the defendant's petition. *Id*.

¶ 38     Before the appellate court, the defendant argued that "because his *pro se* petition was deficient on its face, postconviction counsel acted unreasonably by neither amending the petition nor moving to withdraw if she believed his petition could not be cured by an amendment." *Id*. ¶ 10. Another panel in this division affirmed the dismissal. *Id*.

¶ 39     On appeal to the supreme court, the issue was "whether postconviction counsel's decision to file a Rule 651(c) certificate and stand on petitioner's *pro se* postconviction petition, rather than either amending the petition or moving to withdraw, rebutted the presumption of reasonable

assistance." *Id*. ¶ 13. The defendant argued that his "*pro se* petition was frivolous as written and required dismissal during second-stage proceedings absent an amendment to state a nonfrivolous claim," and thus, his postconviction counsel was obligated to either amend the petition or withdraw. *Id*. ¶ 14. According to the defendant, "his showing that postconviction counsel rested on the petition rebutted the presumption of reasonable assistance, requiring remand for further second-stage proceedings with newly appointed counsel." *Id*. The defendant did not identify any necessary amendments to his *pro se* petition that could have been made by counsel to allow the petition to survive dismissal, but instead argued that his claim was frivolous. *Id*. ¶ 24. Rather, the defendant contended that his postconviction counsel had only one option, to withdraw. The State responded that counsel was only required to make the amendments necessary to shape the defendant's claims into the proper legal form but was not required to make frivolous amendments or find new claims beyond those identified by the defendant. Further, the State observed that postconviction counsel's Rule 651(c) certificate created the presumption that no amendments were available and the defendant failed to rebut the presumption by identifying anything in the record that shows that counsel failed to make a necessary amendment or suggesting any amendments counsel could have made. *Id*. ¶ 25.

¶ 40     The *Huff* court reviewed its previous decision in *People v. Greer*, 212 Ill. 2d 192 (2004), in which the supreme court had held that "[n]othing in the Act prevented postconviction counsel from moving to withdraw if he or she determined that the petition was frivolous or patently without merit and that the attorney's ethical obligations therefore prohibited him or her from continuing representation." *Huff*, 2024 IL 128492, ¶ 27 (citing *Greer*, 212 Ill. 2d at 209). The court in *Huff* observed that the *Greer* court had posed the hypothetical, " 'What is defense counsel to do after he or she determines that defendant's petition is frivolous? Is counsel to stand

mute at all subsequent proceedings? How can counsel, ethically, "present the petitioner's contentions" when counsel *knows* those contentions are frivolous?' " (Emphasis in original.) *Id.* ¶ 28 (quoting *Greer*, 212 Ill. 2d at 206).

¶ 41    The *Huff* court reasoned that the *Greer* hypothetical suggested that "if appointed counsel knows that a petitioner's claims were frivolous or patently without merit, then counsel has an ethical duty to withdraw." *Id.* ¶ 29. However, the supreme court further noted that nothing in the record suggested that postconviction counsel knew that the petition was frivolous or patently without merit. *Id.* Additionally, "the court, not counsel, is the ultimate arbiter of whether 'the claims in the petition are meritorious' and "[d]ifferent counsel may differ in their opinions regarding the merits of the petition." *Id.* (quoting *Urzua*, 2023 IL 127789, ¶ 41).

¶ 42    The *Huff* court concluded that the defendant failed to rebut the presumption of reasonable assistance by postconviction counsel. "Postconviction counsel's Rule 651(c) certificate created a presumption that no required amendments were available. There was no showing that postconviction counsel knew that petitioner's claim was frivolous or patently without merit." *Id.* ¶ 34. The supreme court also differentiated postconviction counsel's decision to rest on the petition from instances in which the counsel confessed or informed the court that the claims lacked merit. *Id.* ¶ 31.

¶ 43    While the question posed in *Huff* differs slightly from defendant's claim, we find the supreme court's reasoning to be instructive. Although the trial court docketed defendant's petition for second stage review, the court did not make any findings on the record that defendant's claims were not frivolous. We point out that defendant also filed a section 2-1401 petition at the same time and both filings were docketed in the status order. Further, there is nothing in the record to suggest that postconviction counsel found defendant's claims to be

frivolous or patently without merit. Defendant has not asserted that counsel should have sought to withdraw when she did not amend his petition, but rather, that her failure to amend amounted to unreasonable assistance. However, following *Huff*'s guidance, an attorney is not unreasonable for standing on the original petition and filing a Rule 651(c) certificate where the petition cannot be amended to raise viable nonfrivolous claims.

¶ 44    As defendant admits, his claims lacked both specificity and the requisite legal framework for ineffective assistance claims, including any allegation that he was prejudiced. He suggests that counsel should have amended the petition to reference the appropriate legal standard and provide documentary support. Defendant points to his own statements made during the hearing in which defendant stated that plea counsel gave him a typed paper for him to read and plea counsel "took advantage of [his] mental ill condition." He asserted that plea counsel told him that he "would be out soon and to read that paper ***." He contends that postconviction counsel should have provided documentary support "in the vein of the information" defendant offered at the hearing and specifically referenced defendant's statement that he was suffering a mental health crisis at the time of the offense and his plea was made unknowingly.

¶ 45    However, defendant fails to assert what documents would have supported defendant's allegations and it is unclear what more counsel could have done regarding defendant's mental health issues. Postconviction counsel in her Rule 651(c) certificate and in her comments to the court stated that she had reviewed defendant's mental health records, including the initial BCX. She further stated that she had a psychologist review defendant's mental health records and the psychologist was unable to find any irregularities.

¶ 46    Moreover, as defendant concedes, his petition did not include allegations related to his mental health. As previously discussed, postconviction counsel is only required to investigate and properly present defendant's claims. *Pendleton*, 223 Ill. 2d at 472. Defendant's petition

alleged that his plea counsel was ineffective for failing to communicate with him in a reasonable manner, failing to prepare a defense, failing to challenge his sentence as a double enhancement, and failing to challenge the erroneous imposition of consecutive sentences. It is unclear how defendant's mental health at the time of the offense was relevant to these claims. Contrary to defendant's assertions, his own statements at the hearing do not indicate that additional documentary support for the claims set forth in his petition exists. Postconviction counsel was not obligated to pursue claims from a *pro se* petition that counsel believed lack merit. See *People v. Bass*, 2018 IL App (1st) 152650, ¶ 16 ("not every petition can be amended to state a substantial constitutional claim"); *People v. Johnson*, 232 Ill. App. 3d 674, 678 (1992) (failure to amend a petition does not establish unreasonable assistance without showing that petition could have been successfully amended).

¶ 47      Additionally, while defendant contends that postconviction counsel was unreasonable for failing to set forth the relevant legal framework, he fails to explain discuss what authority counsel should have included. He does not cite any case law related to ineffective assistance claims in support, including the seminal case involving ineffective assistance of counsel claims, *Strickland v. Washington*, 466 U.S. 668 (1984). He does not argue that the plea counsel's performance was deficient and as a result, he suffered prejudice. See *Strickland*, 466 U.S. at 687-88. For "a guilty-plea defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *People v. Brown*, 2017 IL 121681 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Defendant does not assert either in his petition or on appeal that he would not have pleaded guilty if not for plea counsel's alleged errors. Rather, defendant explicitly stated on the record at the plea hearing that while he was dissatisfied with plea counsel's representation, he wanted to accept the plea.

¶ 48      Defendant also does not provide any suggestion of what documentary evidence could

have supported his claims and that postconviction counsel was unreasonable for failing to attach these supporting documents. Defendant points to his statement at the hearing that plea counsel took advantage of his mental health issues and directed him to read from a preprinted paper at the plea hearing as support for his existing claims. Even if defendant's statements regarding his mental health at the time of the offense related to his contention that plea counsel failed to prepare a defense, the record clearly belies this fact because defendant's mental health at the time of the offense was extensively documented and postconviction counsel reviewed those records before filing her Rule 651(c) certificate. Therefore, we conclude that defendant has not overcome the presumption that his postconviction counsel's representation was reasonable and substantially complied with Rule 651(c).

¶ 49    Finally, defendant contends that postconviction counsel was unreasonable for failing to amend his petition to include the required verification affidavit. The Act requires a postconviction petition to include a verification affidavit. 725 ILCS 5/122-1(b) (West 2018). "The verification affidavit, 'like all pleading verifications, confirms that the allegations are brought truthfully and in good faith.' " *People v. Hommerson*, 2014 IL 115638, ¶ 9 (quoting *People v. Collins,* 202 Ill. 2d 59, 67 (2002)). The sworn verification described in section 122-1, like all pleading verifications, confirms that the allegations are brought truthfully and in good faith. *Collins*, 202 Ill. 2d at 67. The failure to include a verification affidavit can be raised as a basis for dismissal by the State during second stage proceedings. *Hommerson*, 2014 IL 115638, ¶¶ 13-14.

¶ 50    It is uncontested that defendant's *pro se* petition failed to include a verification affidavit and postconviction counsel did not amend or supplement the petition with this affidavit. In its motion to dismiss, the State argued for dismissal on this basis. However, at the hearing, the trial

court declined to dismiss for the lack of a verification affidavit. The court acknowledged the procedural default, but proceeded to consider defendant's petition on the merits. Despite the court's ruling, defendant maintains that postconviction counsel was unreasonable for failing to cure this defect.

¶ 51 The the purpose of Rule 651(c) is to ensure that counsel shapes the defendant's claims into proper legal form and presents those claims to the court, including attempts to overcome procedural bars. *Perkins*, 229 Ill. 2d at 44. "An adequate or proper presentation of a petitioner's substantive claims necessarily includes attempting to overcome procedural bars *** that will result in dismissal of a petition if not rebutted." *Id.*

¶ 52 After carefully reviewing the record on appeal, we find that defendant has failed to overcome the presumption that counsel provided reasonable assistance during the second stage proceedings. While we acknowledge that the Act required a certified verification affidavit from defendant, counsel's failure to amend defendant's *pro se* petition to include a verification affidavit did not result in dismissal of the petition. At the conclusion of the hearing on the State's motion to dismiss, the trial court dismissed the petition on the merits. While the court acknowledged the lack of a verification affidavit, the court explicitly declined to dismiss on that basis and made extensive findings on the merits. In so doing, the court essentially accepted the allegations therein as having been brought truthfully and in good faith, notwithstanding counsel's failure to include a verification affidavit. See *Hommerson*, 2014 IL 115638, ¶ 9 (the verification affidavit confirms that the allegations are brought truthfully and in good faith). Since the court had an independent and sufficient basis to dismiss the petition's claims, postconviction counsel's failure to remedy the lack of a notarized verification affidavit was inconsequential. Given the

dismissal on the merits, we find that defendant has not rebutted the presumption that counsel provided reasonable assistance.

¶ 53    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 54    Affirmed.

¶ 55    PRESIDING JUSTICE HOWSE, specially concurring:

¶ 56    I concur in the majority's outcome in this case. However, it is my opinion, that this court lacks authority to hear claims of unreasonable assistance of postconviction counsel in proceedings on defendant's initial postconviction petition because the initial petition does not allege unreasonable assistance of postconviction counsel.  Therefore, we have no authority to review it under the Act.  The appellate court does not have supervisory authority and issues not raised in an initial postconviction petition are waived. *People v. Jones*, 213 Ill. 2d 498, 508 (2004). Because the outcome of this proceeding would be the same if the court affirmed the trial court's judgment dismissing the petition on its merits or dismissing the petition on the ground defendant's claims are not eligible for determination in this proceeding, I concur in the majority's disposition.