2024 IL App (1st) 230214-U
Order filed: September 19, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-0214

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 93 CR 18741 |
| STEVEN PFIEL, | ) | Honorable Margaret M. Ogarek, Judge, presiding. |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Second-stage dismissal of defendant's postconviction petition is affirmed, where defendant's guilty plea waived any constitutional issues and defendant did not overcome the presumption that he was provided his statutory right to reasonable assistance of postconviction counsel.

¶ 2    Defendant-appellant, Steven Pfiel, appeals from the second-stage dismissal of the postconviction petition he filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2020)). For the following reasons, we affirm.

¶ 3    In August 1993, defendant was charged in this matter with first degree murder and armed violence. Defendant was 17-years old at the time of the offenses, and the victim was a 13-year-old girl. Defendant entered a plea of not guilty to those charges.

¶ 4    On March 18, 1995, while defendant was free on bond in this matter and after he turned 18-years old, defendant was charged in Will County with the murder of his brother and the assault of his sister. Defendant confessed to the murder of his brother. Because defendant was an adult when he murdered his brother, he was eligible to receive the death penalty in the Will County case if he was convicted of murder in this Cook County case. See 720 ILCS 5/9-1(b)(3) (1993); *People v. Sims*, 167 Ill. 2d 483, 521-22 (1995).

¶ 5    Thereafter, defense counsel engaged in negotiations with prosecutors in both Cook and Will County. As a result of these negotiations, defendant entered into a plea agreement in this case on August 18, 1995. As explained by defense counsel at a hearing held on that date, prosecutors in Will County had agreed to forego seeking the death penalty in that case in exchange for a guilty plea to that murder and a sentence of life imprisonment, in exchange for and on the condition that defendant plead guilty to murder in this matter and be sentenced to the maximum extended-term sentence of 100-years' imprisonment. As explained by defense counsel, "there is a crossover as far as the negotiations in this matter, and it is, for lack of a better term, a package negotiation."

¶ 6    Thereafter, the trial court in this matter questioned and admonished defendant with respect to his decision to plead guilty. The State then presented a factual basis for the plea, indicating that it would present evidence that the 13-year old victim was stabbed at least 12 times in her head, neck, and face, and had defensive wounds to her hands. DNA evidence collected from blood on defendant's clothing and in his vehicle matched that of the victim. The trial court then found that defendant understood the nature of the charge and the relevant penalties, and the fact that the penalties could be extended if aggravating factors were found to be present. The court further found that defendant knowingly and intelligently waived his right to a jury trial and that a factual basis existed for the court to accept his plea of guilty.

¶ 7    The parties then immediately proceeded to a sentencing hearing. The State presented evidence in aggravation which included evidence of the nature of the victim's wounds and a victim impact statement from the victim's mother. The State then argued that defendant's actions were "indicative of wanton and cruel behavior" and asked the Court to impose the maximum extended-term sentence. Defendant's counsel did not present evidence in mitigation, noting that: "Usually the Court is required to look at the criminal procedure statute that calls for evaluation of the Defendant in terms of the Defendant's age, his educational background, his criminal history, and so forth; and if you added all of those factors, all of those criteria, those are favorable to the Defendant in this case, but they will not control disposition, disposition has already been reached." Defendant declined the opportunity to make a statement, and the trial court then confirmed that defendant was waiving his right to an updated presentence investigation and that he and counsel had "discussed the legal consequences" of doing so.

¶ 8    The trial court found that that the crime committed was exceptionally heinous and brutal, and indicative of wanton cruelty, and that therefore defendant was eligible for an extended term sentence. The court then imposed the maximum, extended-term sentence of 100-years' imprisonment. Defendant did not seek to withdraw his plea or file a direct appeal in this matter.

¶ 9    On August 18, 2020, defendant filed the *pro se* postconviction petition at issue here. In the petition, defendant specifically stated that he had plead guilty in this case and had been sentenced to 100-years' imprisonment, and that he had subsequently plead guilty to murder in the Will County case and was sentenced to a term of natural life in prison. He also specifically asserted that his guilty plea in both cases was made "in exchange for the Defendant not receiving the Death Penalty in his Will County case *** and explicitly required him to plead guilty to his case in Cook County *** as well as accept the 100-year sentence or he would receive no deal and the State

would pursue the Death Penalty." Nevertheless, citing the protections for juvenile offenders set forth in *Miller v. Alabama*, 867 U.S. 460 (2012), and its progeny, defendant alleged that his *de facto* life sentence of 100 years in prison violated the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) as applied to him, where he was a 17-year old minor at the time of the offense in this matter. More specifically, defendant contended that the 100-year sentence was imposed in violation of *Miller* "due to the trial court's inability to weigh any mitigating factors into consideration due to the nature of the plea deal" and the court's inability to consider his age and potential for rehabilitation.

¶ 10    Because the clerk's office was unable to locate the file in defendant's case within 90 days of the petition's filing, the trial court docketed the petition and appointed counsel to represent petitioner. See 725 ILCS 5/122-1(b) (West 2020) (any petition not dismissed within 90 days of filing must be docketed for further consideration). On January 14, 2022, appointed counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Therein, postconviction counsel certified that:

> "1. I have consulted with the petitioner, STEVEN PFIEL, personally or by letter to ascertain his contentions of deprivations of constitutional rights;
>
> 2. I have reviewed the plea and sentencing transcript in this case looking specifically for any and all Pre-trial motions and Motions for a New Trial.
>
> 3. I have not filed an Amended Petition for Post-Conviction Relief. The *pro se* *** petition for post-conviction relief does adequately set forth the petitioner's claims of deprivation of his constitutional rights."

¶ 11    On June 10, 2022, the State filed a motion to dismiss the petition. Therein, the State argued that the petition should be dismissed because: (1) pursuant to *People v. Jones*, 2021 IL 126432, defendant could not avail himself of *Miller*'s protections because his sentence was imposed pursuant to a fully negotiated guilty plea that waived any constitutional challenges, and (2) alternatively, because the sentence imposed resulted from an exercise of the trial court's discretion that included consideration of defendant's youth, his sentence fully complied with *Miller* and its progeny. The trial court granted the State's motion to dismiss the petition in a written order entered on January 20, 2023. Therein, the court agreed with the State on both arguments raised in the motion to dismiss. Defendant timely appealed.

¶ 12    We first address defendant's contention that the trial court improperly dismissed his petition at the second stage. We disagree.

¶ 13    The Act provides a three-stage procedure for criminal defendants to raise constitutional issues about their trial or sentencing that could not have been raised on direct appeal. *People v. Morales*, 2019 IL App (1st) 160225, ¶ 17; 725 ILCS 5/122-1 *et seq*. (West 2022). At the first stage, the postconviction court evaluates the petition and determines whether it is frivolous or patently without merit. *Id*. The petition advances to the second stage if: (1) the court fails to rule on the petition within the 90-day period, regardless of the petition's merit (*People v. Harris*, 224 Ill. 2d 115, 129 (2007)), or (2) the facts alleged in the petition state an arguable claim of constitutional deprivation (*People v. Hodges*, 234 Ill. 2d 1, 16 (2009)). If the petition makes a substantial showing of a constitutional violation, it advances to a third-stage evidentiary hearing where the postconviction court receives evidence and determines whether defendant is entitled to relief. 725 ILCS 5/122-6 (West 2022).

¶ 14    "At the second stage of postconviction proceedings, the State may file a motion to dismiss the petition." *People v. Graham*, 2012 IL App (1st) 102351, ¶ 31. When reviewing a motion to dismiss at the second stage, "we accept as true all factual allegations that are not positively rebutted by the record." *People v. Johnson*, 2017 IL 120310, ¶ 14. A petitioner is only entitled to a third-stage evidentiary hearing where "the allegations in the petition supported by affidavits, records, or other evidence [citation] make a substantial showing" of a deprivation of constitutional rights. (Internal quotation marks omitted.) *People v. Dupree*, 2018 IL 122307, ¶ 28. We review *de novo* the second-stage dismissal of a postconviction petition. *Johnson*, 2017 IL 120310, ¶ 14.

¶ 15    The history of the constitutional propriety of sentencing juvenile offenders to life or *de facto* life sentences considering *Miller* and its progeny is long and need not be stated in full here. See *People v. Wilson*, 2023 IL 127666, ¶¶ 26-42 (detailing history). It is sufficient to note that in *Miller*, 567 U.S. 460, the United States Supreme Court held that the eighth amendment (U.S. Const., amend. VIII) prohibits the mandatory sentencing of a juvenile to life in prison without parole, and requires that a sentencing court have discretion to consider a juvenile's youth and its attendant circumstances when sentencing a juvenile. The Illinois Supreme Court held that the protections in *Miller* apply to *de facto* life sentences of more than 40 years. *People v. Buffer*, 2019 IL 122327, ¶¶ 27, 40. It is undisputed that defendant was a juvenile at the time he committed the murder at issue here and that the 100-year sentence imposed upon defendant for that murder constitutes a *de facto* life sentence, such that the constitutional protections in *Miller* apply to defendant's sentencing.

¶ 16    However, our supreme court has held that a knowing and voluntary guilty plea waives any constitutional challenge based on subsequent changes in the applicable law, including challenges based upon *Miller* and its progeny where the plea was fully negotiated. *Jones*, 2021 IL 126432, ¶

26. It is quite clear—despite defendant's protestations to the contrary on appeal—that defendant's 100-year sentence resulted from a fully negotiated guilty plea, such that his constitutional challenge pursuant to *Miller* has been waived.

¶ 17    We reiterate that when reviewing a motion to dismiss at the second stage, "we accept as true all factual allegations that are not positively rebutted by the record." *Johnson*, 2017 IL 120310, ¶ 14. As noted above, here defendant's own petition specifically asserts his guilty pleas were fully negotiated, as the pleas in both cases were made "in exchange for the Defendant not receiving the Death Penalty in his Will County case *** and explicitly required him to plead guilty to his case in Cook County *** as well as accept the 100-year sentence or he would receive no deal and the State would pursue the Death Penalty." Nor does the record in any way positively rebut this allegation. The record in fact reflects that defense counsel presented the guilty plea to the trial court as a fully negotiated plea agreement, and the parties proceeded on that basis.

¶ 18    On appeal, defendant attempts to throw doubt on this issue by noting that the plea could not have been fully negotiated because the State introduced significant evidence in aggravation at sentencing, which would have been irrelevant unless the plea was open. However, the record is quite clear that this evidence was only entered to provide a basis for the trial court to conclude that the murder was exceptionally heinous and brutal, and indicative of wanton cruelty, such that defendant was in fact eligible for the 100-year extended-term sentence that defendant and the State negotiated.

¶ 19    Having concluded that defendant's guilty plea waived his constitutional challenge pursuant to *Miller*, we need not further address the parties' alternative, substantive arguments regarding whether defendant's sentencing complied with *Miller*. The dismissal of defendant's petition at the second stage is affirmed.

¶ 20     We next address defendant's contention that his counsel provided unreasonable assistance during the postconviction proceedings.

¶ 21     Under the Act, counsel appointed at the second stage must provide a reasonable level of assistance. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). To provide a reasonable level of assistance, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) provides that postconviction counsel: (1) consult with defendant—either by mail or in person—to ascertain his claims of deprivation of constitutional rights; (2) examine the trial record; and (3) amend the *pro se* petition where necessary for an adequate presentation of defendant's contentions. *Suarez*, 224 Ill. 2d at 42. Postconviction counsel's compliance with Supreme Court Rule 615(c) is mandatory and generally shown by the filing of a certificate averring to such performance. *People v. Perkins*, 229 Ill. 2d 34, 50 (2007).

¶ 22     The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance during second-stage proceedings under the Act. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23. The burden is on the defendant to overcome this presumption by demonstrating that postconviction counsel failed to substantially comply with the duties imposed by Rule 651(c). *Id.* ¶ 23. The presumption of compliance may be rebutted by the record. *People v. Marshall*, 375 Ill. App. 3d 670, 680 (2007). Where postconviction counsel fails to comply with the requirements of Rule 651(c), the proper remedy on appeal is to remand for further postconviction proceedings. See *Suarez*, 224 Ill. 2d at 47 (recognizing that our supreme court "has consistently held that remand is required where postconviction counsel failed to fulfill the duties of consultation, examining the record, and amendment of the *pro se* petition, regardless of whether the claims raised in the petition had merit."). Our review of postconviction counsel's compliance with Rule 651(c) is *de novo*. *Jones*, 2011 IL App (1st) 092529, ¶ 19.

¶ 23    We find that a rebuttable presumption that postconviction counsel provided reasonable assistance during the second-stage proceedings below was created by the filing of a Rule 651(c) certificate. *Id*. ¶ 23. As such, it is defendant's burden to overcome this presumption by demonstrating that postconviction counsel failed to substantially comply with the duties imposed by Rule 651(c). *Id*. A defendant may do so "by, *inter alia*, demonstrating that postconviction counsel did not make all necessary amendments to the *pro se* petition." *People v. Addison*, 2023 IL 127119, ¶ 21.

¶ 24    Defendant first tries to meet his burden by asserting that postconviction counsel "made a lackluster effort to obtain critical documents in support of Pfiel's *pro se* claim." Specifically, he claims that counsel unreasonably failed to obtain documents from the Will County case that might have shed light on the "assumption that Pfiel entered into a fully negotiated guilty plea based on sentencing concessions in Pfiel's Will County case in order to avoid the death penalty." Defendant contends that the "guilty plea and sentencing transcripts in Will County case *** were thus necessary for a proper presentation of Pfiel's claims, and counsel's failure to obtain them constituted unreasonable assistance."

¶ 25    Defendant also contends that there "are numerous other records that would have been helpful for Pfiel in arguing that his 100-year sentence was imposed without constitutionally sufficient consideration of Pfiel's youth and its attendant characteristics." Faulting postconviction counsel for failing to obtain these documents, defendant contends that "[a]s such, it is entirely unknown what information was included *** and whether it supports Pfiel's claim."

¶ 26    However, amendments that would do nothing more than further frivolous or patently nonmeritorious claims are not necessary to comply with Rule 651(c). *People v. Huff*, 2024 IL 128492, ¶ 22. Additionally, in the context of postconviction counsel's failure to amend a *pro se*

post-conviction petition, upon the filing of a Rule 651(c) certificate "it is presumed from the lack of an amendment that there were none to be made." *Id.* ¶ 24. On the record before us, we find that defendant has failed to rebut the presumption that postconviction counsel provided reasonable assistance.

¶ 27 Next, defendant contends that postconviction counsel failed to properly rebut purported misstatements made in the State's motion to dismiss regarding the circumstances at sentencing, specifically with respect to whether and to what extent at sentencing the trial court considered "all factors set forth in *Miller*." However, even if we agreed that postconviction counsel failed to do so, no such requirement to do so under these specific circumstances is contained in the Act or in Rule 651(c). Defendant has not cited any authority that the failure to rebut purported misstatements by the State under the specific circumstances of this matter would constitute unreasonable assistance under the Act or a violation of Rule 651(c). Indeed, our supreme court has recognized that postconviction counsel's role is to shape a defendant's complaints into the proper legal form and to present those complaints to the court, rather than to protect postconviction petitioners from the prosecutorial forces of the State. *Huff*, 2024 IL 128492, ¶ 21.

¶ 28 Finally, defendant contends that postconviction counsel provided unreasonable assistance by failing to amend the petition to include an argument that defendant was provided ineffective assistance of counsel at sentencing. However, postconviction counsel is only required to investigate and properly present the claims contained in the defendant's *pro se* petition itself. *People v. Pendleton*, 223 Ill. 2d 458, 475-76 (2006). "While postconviction counsel may conduct a broader examination of the record *** and may raise additional issues if he or she so chooses, there is no obligation to do so." *Id*. We therefore reject defendant's contention that postconviction counsel provided unreasonable assistance by failing to add such a claim.

¶ 29    For the foregoing reasons, we affirm the judgement of the circuit court.

¶ 30    Affirmed.