2026 IL App (1st) 240718-U

No. 1-24-0718

SIXTH DIVISION

March 27, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 03260 |
| | ) | |
| DONALD ARRINGTON, | ) | The Honorable |
| | ) | Laura Ayala-Gonzalez, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justice Hyman concurred in the judgment.
Justice Gamrath dissented.

**ORDER**

¶ 1    *Held*: Reversed and remanded. Postconviction counsel did not substantially comply with Illinois Supreme Court Rule 651(c) because counsel adopted the petitioner's claims but failed to provide necessary support.

¶ 2    Donald Arrington contends postconviction counsel provided unreasonable assistance because counsel failed to amend his petition by attaching medical records. We agree that counsel's litigation fell below the standard of reasonable assistance. Counsel adopted and advanced Arrington's claim that trial counsel erred by not raising an insanity defense. Yet counsel never

attached evidence in support, like records from the evaluation finding Arrington insane at the time of the offense. Nor did counsel explain the absence of that evidence, which the circuit court noted when dismissing Arrington's petition. We reverse and remand.

¶ 3                                    BACKGROUND

¶ 4      Donald Arrington's postconviction petition reached the second stage. He had pleaded guilty to first-degree murder in exchange for a 25-year sentence with three years of mandatory supervised release. His petition raised two claims attacking (i) the term of mandatory supervised release as violative of his plea bargain, and alternatively, (ii) trial counsel's investigation and litigation of an insanity defense. Postconviction counsel adopted both claims, attaching an affidavit from Arrington in support. The circuit court granted the State's motion to dismiss. We recount the facts necessary to resolve this appeal.

¶ 5                                    Guilty Plea

¶ 6      Arrington's initial attorney, Assistant Public Defender Andrea Webber, retained an expert, Dr. Bruce Frumkin, who evaluated Arrington and found that he was insane at the time of the offense. Counsel Webber then filed a discovery answer listing insanity as a defense and Dr. Frumkin as a witness.

¶ 7      Assistant Public Defender Scott Kozicki took over Arrington's defense. During that time, the State moved the court to order Forensic Clinical Services to evaluate Arrington. Dr. Christofer Cooper found that Arrington was sane at the time of the offense. Counsel Kozicki later announced that the defense would not be calling Dr. Frumkin.

¶ 8      Arrington pleaded guilty to first degree murder in exchange for the dismissal of the other charges, dismissal of an unrelated case (Cook County no. 18 CR 10861), and a 25-year term of imprisonment.

¶ 9    The court accepted Arrington's plea and sentenced him to 25 years in prison and 3 years of mandatory supervised release. Arrington did not move to withdraw his plea or file a notice of appeal.

¶ 10                           Postconviction Proceedings

¶ 11    Arrington petitioned for postconviction relief, contending (i) the term of mandatory supervised release violated his plea bargain, and alternatively, (ii) trial counsel provided ineffective assistance when investigating and litigating the insanity defense.

¶ 12                              i. Prior Proceedings

¶ 13    The circuit court acknowledged Arrington's postconviction petition but set the case for a *Krankel* inquiry (*People v. Krankel*, 102 Ill.2d 181 (1984)) to question Arrington and counsel Webber.

¶ 14    For the first issue, Arrington explained that he believed the three-year term of mandatory supervised release was included within the 25-year prison term. The circuit court explained that mandatory supervised release was in addition to the prison term. (At the plea hearing, the court had admonished: "[T]he sentencing range on this charge is anywhere from 20 to 60 years in the Illinois Department of Corrections *** plus three years of mandatory supervised release formerly known as parole or lifetime registration.")

¶ 15    For issue two, Arrington explained how counsel Webber chose not to pursue the insanity defense: "I got the idea that she seemed to say that it [testimony from the expert witnesses] was going to cancel each other out." The court noted that counsel Webber was no longer representing Arrington when the behavioral clinical examination occurred. Arrington replied, "I'm saying that my attorney didn't pursue something that was in my best interest." In his *pro* se petition, he had

written: "Attorney Webber told me [Dr. Frumkin's evaluation] means nothing because of the laws."

¶ 16    Former counsel Webber testified about hiring Dr. Frumkin, who evaluated Arrington and found him to be insane during the offense. ("I believe he indicated we could go forward with the affirmative defense of insanity.") She also recalled the State disagreeing and asking that Arrington be evaluated by a different expert, who found that Arrington was sane during the offense. Webber noted that the evaluation occurred after her representation ended. She agreed with the court when it asked whether she "sufficiently investigate[d]" Arrington's claims, noting, "[T]here might have been also another doctor, but I cannot remember for sure."

¶ 17    The circuit court denied Arrington's petition as frivolous.

¶ 18    On appeal, the parties agreed the circuit court erred by engaging in factfinding at the first stage. This court granted an agreed motion for summary disposition reversing the judgment and remanding for the second stage and the appointment of counsel. *People v. Arrington*, 1-22-0297 (1st Dist. Sep. 15, 2022) (summary order).

¶ 19                                ii. Proceedings on Remand

¶ 20    Appointed counsel filed a 651(c) certificate and a supplemental petition. The supplemental petition "adopt[ed]" Arrington's *pro se* claims and attached one exhibit, a signed affidavit by Arrington. Arrington averred that the allegations and exhibits in his petition are true to the best of his knowledge and belief.

¶ 21    The State moved to dismiss, arguing (i) the plea colloquy showed that the circuit court properly admonished Arrington about mandatory supervised release before accepting his plea; (ii) the plea was valid and thus waived Arrington's claim against trial counsel; and (iii) the petition attached no medical records in support.

¶ 22    Appointed counsel filed nothing in reply. The parties referred to their filings when offered the opportunity to argue in court.

¶ 23    The circuit court dismissed Arrington's petition. The court found that the record rebutted the claim that he did not know he would have to serve mandatory supervised release. As for ineffective assistance, the court found that Arrington had not shown deficiency or prejudice. Nor did he attach documents or other evidence in support of his claim against trial counsel.

¶ 24                                          ANALYSIS

¶ 25    Arrington contends that postconviction counsel failed to amend his petition by attaching supporting documents. He argues counsel's failure deprived him of the reasonable assistance guaranteed by Illinois Supreme Court Rule 651(c). His claim involves legal matters, which we review *de novo*, so without deference to the circuit court's order. *People v. Addison*, 2023 IL 127119, ¶ 19.

¶ 26                              Reasonable Assistance

¶ 27    The Post-Conviction Hearing Act (Act) provides criminal defendants with an opportunity to raise a collateral challenge to their conviction or sentence, based on a substantial violation of their federal or state constitutional rights. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act and the Illinois Supreme Court Rules work together to guarantee counsel provides "reasonable assistance" to petitioners after they have filed *pro se*, that is, on their own. *People v. Owens*, 139 Ill. 2d 351, 361 (1990).

¶ 28    To ensure reasonable assistance, postconviction counsel must: (i) consult the petitioner to ascertain their claims, (ii) examine the record, and (iii) make necessary amendments to the *pro se* claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 29 Postconviction counsel filed a Rule 651(c) certificate, attesting that he had consulted with Arrington over "written correspondence," examined the record of the underlying proceedings including any exhibits, and would "adequately present[]" Arrington's claims in a supplemental petition. The supplemental petition "adopt[ed]" Arrington's *pro se* claims and attached a signed affidavit by Arrington averring that the allegations and exhibits in his petition were true.

¶ 30 Generally, a valid certificate creates a rebuttable presumption that counsel provided the reasonable level of assistance. *Addison*, 2023 IL 127119, ¶ 21. Arrington does not attack the validity of the counsel's certificate. So he bears the burden of overcoming this presumption by demonstrating that counsel did not substantially comply with the rule when litigating Arrington's claim that trial counsel. See *id.*

¶ 31                                        Underlying Claim

¶ 32 Arrington contends postconviction counsel provided unreasonable assistance in violation of Rule 651(c) by failing "to amend his petition with critical supporting documents[.]" Arrington focuses on a single claim in the petition: whether "trial counsel was ineffective for failing to raise an affirmative defense of insanity and by failing to investigate his mental health."

¶ 33 Challenges like Arrington's, which allege ineffective assistance of counsel before pleading guilty, fall under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 (1984). "Counsel's conduct is deficient under *Strickland* if the attorney failed to ensure that the defendant entered the plea voluntarily and intelligently." *People v. Rissley*, 206 Ill. 2d 403, 457, (2003). "To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (internal quotation omitted).

¶ 34    Arrington averred in his *pro se* petition that trial counsel advised him that Dr. Frumkin's evaluation finding him insane during the offense would not support an affirmative defense: "Attorney Webber told me [Dr. Frumkin's evaluation] means nothing because of the laws." Likewise, at the (improper) *Krankel* inquiry, Arrington told the circuit court: "I got the idea that she seemed to say that [testimony from the expert witnesses] was going to cancel each other out."

¶ 35    Liberally construed and taken as true, Arrington sufficiently alleged that trial counsel misadvised him about the law on insanity. See generally *People v. Sanders*, 2016 IL 118123, ¶ 31 ("The question raised in an appeal from an order dismissing a postconviction petition at the second stage is whether the allegations in the petition, liberally construed in favor of the petitioner and taken as true, are sufficient to invoke relief under the Act."). Illinois law presumes all people are sane, and to raise the affirmative defense of insanity, a defendant must present some evidence of insanity. *People v. Silagy*, 101 Ill.2d 147, 168 (1984); see also 720 ILCS 5/3-2(a) (West 2020) (placing burden on defendant must present some evidence of affirmative defense). A person is insane and not criminally responsible for his conduct if he lacks substantial capacity to appreciate the criminality of that conduct due to a mental disease or defect. 720 ILCS 5/6-2(a) (West 2020) (defining affirmative defense of insanity).

¶ 36    Contrary to trial counsel's alleged assessment, Dr. Frumkin's evaluation was not "nothing" but rather "some evidence" permitting Arrington to raise the affirmative defense of insanity. See 720 ILCS 5/3–2(a). Further, the existence of a contrary evaluation would not preclude—or "cancel [] out" —the affirmative defense of insanity at trial. *E.g.*, *Silagy*, 101 Ill.2d at 169 (analyzing testimony of dueling experts on issue of defendant's insanity).

¶ 37    Likewise, Arrington sufficiently alleged prejudice. Liberally construed and taken as true (*Sanders*, 2016 IL 118123, ¶ 31), Dr. Frumkin's expert opinion was clear and convincing evidence

Arrington's insanity at the time of the offense. 720 ILCS 5/3-2 (West 2020). And that evidence would have established that Arrington was "not criminally responsible" for first degree murder. 720 ILCS 5/6-2(a) (West 2020). Thus, with that evidence in hand, Arrington "would not have pleaded guilty and would have insisted on going to trial." *Rissley*, 206 Ill. 2d at 457.

¶ 38 We describe this claim in detail to lay the ground for considering and rejecting the State's characterizations on appeal. First, the State asserts that Arrington's claim is "frivolous" and "waived" because Arrington "draws no connection between [trial counsel's] investigation into his mental health and sanity and his guilty plea." The record demonstrates, however, that Arrington did precisely that. He averred in his *pro se* petition: "Attorney Webber told me [Dr. Frumkin's evaluation] means nothing because of the laws." That is, he averred that trial counsel advised him that Dr. Frumkin's evaluation finding him insane during the offense would not support an affirmative defense.

¶ 39 Second, the State asserts that Arrington "stated twice in his petition *** that he 'does not seek' to withdraw his guilty plea." But the State quotes from a separate claim in Arrington's petition, the claim attacking the term of mandatory supervise release in the alternative. The State cites no authority for the idea that parties may not argue in the alternative. Indeed, the State on appeal argues in the alternative by asserting: (i) counsel had no duty to amend Arrington's petition and (ii) Arrington has not rebutted the presumption that counsel honored the duty to amend. Neither the State on appeal nor Arrington litigating *pro se* has conceded an issue by arguing in this way.

¶ 40                                    Duty to Amend

¶ 41 Rule 651(c) mandates postconviction counsel amend the petition as necessary to present the petitioner's claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Likewise, the Act provides that

"affidavits, records, or other evidence" shall be attached to the postconviction petition, or the petition "shall state why the same are not attached." 725 ILCS 5/122-2 (2022). The record demonstrates that postconviction counsel erred by adopting Arrington's claims yet making no meaningful amendments in support.

¶ 42     In the *pro se* petition, Arrington claimed that trial counsel should have raised an insanity defense, relying in part on Dr. Frumkin's evaluation. We liberally construe Arrington's claims and take them as true at this stage. *Sanders*, 2016 IL 118123, ¶ 31. Thus, we reject the State's assertion that Arrington's claim concerns only counsel Webber and not counsel Kozicki because Arrington, acting *pro se*, named only counsel Webber in his petition.

¶ 43     Arrington also claimed that an investigation into his mental health background, by either trial attorney, would have shown he suffered from ADHD, bipolar types one and two, severe mania, and schizophrenia. And he claimed to have been hospitalized several times, from ages 18 to 22, due to mental illness. Similarly, the record showed that trial counsel hired Dr. Frumkin, listed him as a potential witness in support of an insanity defense, and even stated (at the improper *Krankel* inquiry) that she may have consulted other doctors.

¶ 44     Postconviction counsel adopted these allegations in full. Yet counsel failed to support the petition: either attaching medical records or explaining their absence. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017); 725 ILCS 5/122-2 (2022). For example, counsel should have explained whether he had tried to obtain Dr. Frumkin's evaluation or to investigate Arrington's mental health history. Instead, the record establishes that at the hearing on the State's motion dismiss counsel rested on his own patently insufficient pleading.

¶ 45     The Illinois Supreme Court recently emphasized postconviction counsel's duty to provide a valid affidavit, record, or other evidence in support of a *pro se* claim when counsel adopts a *pro*

*se* petition. *People v. Urzua*, 2023 IL 127789, ¶¶ 59-65 (citing 725 ILCS 5/122-2 (West 2022)). In *Urzua*, the petitioner filed a *pro se* postconviction petition alleging actual innocence, which was supported by an unnotarized statement of a witness. *Urzua*, 2023 IL 127789, ¶ 61. At the second stage, postconviction counsel adopted the *pro se* petition without making any amendments, believing that the "unnotarized statement" of the witness "was sufficient to advance the petition and survive a second-stage dismissal." *Id.* ¶¶ 63-64. The supreme court held, the presumption of reasonable assistance created by the Rule 651(c) certificate was belied by counsel's: (i) "failure to amend the petition or the attached unnotarized statement and [(ii)] *** [his] misstatement of the Act's affidavit requirements." *Id.* ¶ 64. Accordingly, the court concluded that counsel did not render reasonable assistance and reversed the circuit court's dismissal, remanding the case for further proceedings with new counsel. *Id.* ¶ 65.

¶ 46    Here, as in *Urzua*, counsel (i) adopted a *pro se* petition that he failed to amend, (ii) laboring under the mistaken belief that Arrington's unsupported allegations were sufficient under the Act. Rule 651(c)'s purpose "is to ensure that counsel shapes *the petitioner's claims* into proper legal form and presents those claims to the court." (Emphasis added.) *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007). Here, despite observing that allegations under the Act must be "well-pleaded," counsel's supplemental petition attached only Arrington's affidavit in support. See *People v. Burns*, 2019 IL App (4th) 170018, ¶¶ 20-22 ("Although defendant attached his affidavit alleging trial counsel refused to let him testify, both of his postconviction attorneys failed to specify the substance of defendant's intended testimony."). As the circuit court noted when dismissing the petition, Arrington alleged trial counsel should have raised an insanity defense but failed to support that claim either by attaching evidence like Dr. Frumkin's evaluation or by explaining the absence of that evidence. See 725 ILCS 5/122-2 (West 2022). Accordingly, the record rebuts the

presumption created by the Rule 651(c) certificate that Arrington received reasonable assistance of counsel. *Urzua*, 2023 IL 127789, ¶ 64.

¶ 47 In reaching this conclusion, we reject the State's apparent suggestion that the existence of evidence supporting Arrington's claim is "speculative" or "hypothesize[d]." Counsel Webber testified that she hired Dr. Frumkin, who concluded they could pursue an insanity defense. Counsel Webber had also filed notice of the affirmative defense of insanity. Likewise, whether to pursue an insanity defense remained the focus of counsel Webber after she handed the case over to counsel Kozicki. And counsel Kozicki sought and received multiple extensions before announcing that the defense would no longer call Dr. Frumkin as a witness. Put simply, the record strongly suggests evidence exists supporting Arrington's claim, including medical professionals, lawyers, and any documents they generated along the way. *Cf. People v. Bew*, 228 Ill. 2d 122, 135 (2008) (finding "no factual basis in the record to support the contention that defendant and the State were involved in active or serious plea negotiations").

¶ 48 We also reject the State's contention that the Rule 651(c) certificate allows us to presume that postconviction counsel determined that any report Dr. Frumkin wrote was "unavailable." As we explained, by focusing on the report, the State unduly narrows the type of evidence that could support Arrington's claim. But even more to the point, the State overlooks section 122-2's requirement that the petition "shall state why [missing evidence] is not attached." 725 ILCS 5/122-2 (West 2022). Here, postconviction counsel made no mention of Dr. Frumkin's report being unavailable and indeed failed even to cite section 122-2 requirement in the supplemental petition.

¶ 49 Relatedly, the State misconstrues *People v. Huff*, 2024 IL 128491, as holding that "[postconviction] counsel's failure to amend a meritless petition [is] insufficient to rebut the presumption of reasonable assistance." On the contrary, *Huff*'s holding concerned only when

postconviction counsel has a duty to withdraw and, among other things, the *pro se* claim was already in "the best possible legal form." *People v. Huff*, 2024 IL 128492, ¶ 30 (no duty to withdraw "when petitioner's *pro se* petition posits a weak legal claim but the claim is presented in the best possible legal form and there is no indication that counsel knew the claim was frivolous"). Arrington's appeal, in contrast, concerns postconviction counsel's duties when adopting and advancing a *pro se* claim calling out for routine amendments under the Act.

¶ 50 Arrington's claim against trial counsel is strongly suggested, but not answered, by the record before us. We do not yet know the full advice counsel Webber and counsel Kozicki gave Arrington about the insanity defense. *Rissley*, 206 Ill. 2d at 457. And we do not yet know the facts underlying Dr. Frumkin's determination that Arrington was insane during the offense. See *People v. Anderson*, 113 Ill. 2d 1, 11 (1986). Because the Act and Illinois Supreme Court Rules guarantee Arrington reasonable assistance, and because Arrington has yet to receive that, we reverse and remand for second stage proceedings with new counsel.

¶ 51 Remedy

¶ 52 Our concern is not the potential merit of any single claim but the principle that reasonable assistance cannot be achieved where counsel fails to substantially comply with Rule 651(c) for even one claim. See *People v. Suarez*, 224 Ill. 2d 37, 51 (2007) (noting, "where postconviction counsel does not adequately complete the duties mandated by the rule, the limited right to counsel conferred by the Act cannot be fully realized."). On remand, new counsel must consult with Arrington, review the record, and make any amendments necessary for any claim Arrington seeks to raise. See *People v. Agee*, 2023 IL 128413, ¶ 44 ("[I]t would nullify Rule 651(c) if we found that postconviction counsel was not required to exercise reasonable care when amending a petition with a claim that counsel added after consulting with petitioner.")

¶ 53                                    Response to Dissent

¶ 54     Arrington's petition contains two distinct claims. When addressing his *plea*, Arrington disclaimed any intent to withdraw it. When addressing *counsel's handling* of the insanity defense, however, he did not repeat that limitation. Collapsing them into a single claim, as the dissent does, misconstrues the settled rule that *pro se* postconviction petitions must be liberally construed. See *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 55     Liberal construction exists because *pro se* petitioners lack legal training. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). Courts read such petitions to capture the substance of a claim, not the particular words used to describe it. When Arrington alleged ineffective assistance in connection with abandoning the insanity defense and entering a plea, the claim reasonably encompasses both his counsel, Webber and Kozicki.

¶ 56     Nor does the dissent fairly address Arrington's affidavit. Arrington stated that counsel told him Dr. Frumkin's evaluation "means nothing because of the laws." That allegation bears directly on counsel's decision not to pursue the insanity defense. Needless to say, advice about the legal value of an expert opinion informs whether counsel investigates or advances a defense.

¶ 57     In any event, this appeal does not turn on the validity of Arrington's plea but on whether postconviction counsel complied with Rule 651(c) after choosing to pursue the insanity-based ineffective-assistance claim. Once postconviction counsel adopted Arrington's insanity-based ineffective-assistance claim, counsel was required either to supply evidentiary support for that claim or explain its absence. Rule 651(c) and section 122-2 require no less.

¶ 58     The Rule 651(c) certificate creates a presumption of reasonable assistance, but that presumption is not irrebuttable. Where counsel adopts a claim dependent on documentary support

yet supplies neither the documentation nor an explanation for its absence, the presumption is overcome. *Cf. People v. Wallace*, 2016 IL App (1st) 142758, ¶ 27.

¶ 59    The dissent focuses on whether trial counsel once investigated the insanity defense. That is not the dispositive question. The issue is whether postconviction counsel complied with Rule 651(c) after electing to proceed on that claim. Because counsel neither supplied the supporting evidence nor explained its absence, the presumption of reasonable assistance is rebutted.

¶ 60    The dissent disagrees with the result. But disagreement does not transform liberal construction into an alteration of a claim or into an excuse for noncompliance with Rule 651(c). On this record, the statutory requirements governing postconviction representation were not satisfied.

¶ 61    Reversed and remanded with instructions.

¶ 62    JUSTICE GAMRATH, dissenting:

¶ 63    Respectfully, I dissent.

¶ 64    Arrington faced a life sentence for murder, armed home invasion, and arson. Instead of risking a life sentence, he accepted a fully negotiated plea for 25 years' imprisonment and three years' mandatory supervised release and never sought to withdraw it. In his postconviction petition, he twice, without qualification, stated that "his plea was made knowingly and voluntary" and that he "does not seek to withdraw his plea." He has not asked us to undo it. I would hold him to those statements, deem his ineffective assistance claim waived, and affirm dismissal of his postconviction petition.

¶ 65    Waiver aside, I would confine our review to the claim Arrington made. His petition blames Webber alone. The majority interprets the claim to include Kozicki, who negotiated the plea, though Arrington never challenged Kozicki's performance in any *pro se* filings or briefs filed

through counsel. While courts must liberally construe postconviction petitions, we should not inject issues Arrington did not raise.

¶ 66    Nor should we fault postconviction counsel for omitting records that do not bear on the constitutional claim asserted. Arrington asserted that Webber was ineffective for "failing in raising insanity as a defense," "not using the expert," and "failure to investigate." The record shows the opposite: Webber investigated the insanity defense, retained an expert, listed him as a witness, and affirmatively pleaded insanity. Additional mental health records or Dr. Frumkin's opinion would not bolster a claim the record clearly disproves.

¶ 67    The majority construes Arrington's claim as attacking counsel's pre-plea advice based on one remark in Arrington's affidavit: "Attorney Webber told me that it means nothing because of the laws." The supposed advice occurred over 19 months before the plea. Arrington has never alleged misadvice, argued he would have rejected the plea, or expanded the claim beyond Webber's handling of the insanity defense. His opening brief confirms the narrowness of the issue, describing Arrington's claim as one in which "his trial counsel was ineffective for failing to raise an affirmative defense of insanity and for failing to investigate his mental health." Though I appreciate the majority's liberal construction of Arrington's petition, we should not introduce a theory neither Arrington nor his counsel pursued.

¶ 68    *People v. Urzua*, 2023 IL 127789, does not assist Arrington. *Urzua* involved a claim of actual innocence and a failure to attach a notarized witness statement. Here, postconviction counsel supplemented Arrington's petition with a notarized affidavit, asserting Arrington's mental health issues and an expert's finding of unfitness at the time of the offense. While these facts are accepted as true at the second stage, they do not show that Webber failed to investigate, use an expert, or raise insanity as a defense. She did all three.

- 15 -

¶ 69    Finally, the Rule 651(c) certificate filed by postconviction counsel permits the presumption that additional records were unavailable or unnecessary. We have recognized this presumption before in less compelling circumstances. See *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 27. We should do so again, particularly where the omitted records do not bear on whether Webber investigated, used an expert, or asserted the insanity defense. The record shows she did.

¶ 70    At the second stage, the question is whether the postconviction petition makes a substantial showing of a constitutional violation. Arrington's does not. He waived any challenge to pre-plea constitutional defects, and the record affirmatively disproves his claim that Webber was ineffective based on her alleged failure to investigate, use an expert, and assert an insanity defense. Because his petition cannot succeed, with or without additional records, I would affirm its dismissal.